UNITED STATES of America, Appellee,

v.

Gerald Stanley SHERMAN and Richard Henry Holland, Appellants.

No. 24731.

United States Court of Appeals, Ninth Circuit.

Aug. 10, 1970.

Rehearing Denied Sept. 29, 1970.

William T. Griffin, New York City (argued), Robert J. Hirsh, of Messing & Hirsch, Tucson, Ariz., for appellant R. H. Holland.

James J. Doyle, New York City, for appellant G. S. Sherman.

James Wilkes (argued), Asst. U. S. Atty., Richard K. Burke, U. S. Atty., Rubin Salter, Jr., Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before JERTBERG, CARTER and TRASK, Circuit Judges.

TRASK, Circuit Judge:

Appellants were convicted by a jury of a violation of 21 U.S.C. § 176a. (Illegal concealment and transportation of marihuana). On appeal they challenge the failure to grant a motion for the suppression of evidence. They also raise a number of constitutional claims. We affirm.

## MOTION TO SUPPRESS

A motion to suppress evidence was filed and a hearing on the motion was held pursuant to Rule 41(e) on November 12, 1968. The evidence taken at the hearing stated most favorably to the position of the government, Cotton v. United States, 371 F.2d 385, 388 (9th Cir. 1967), was obtained from two officers.

Mr. Everett H. Turner is a Customs Port Investigator who has been stationed at Nogales approximately five years.

Just after 10:30 p. m. on September 30, 1968, he received a call from Deputy Sheriff Bracamonte of Santa Cruz County, Arizona (Nogales). Bracamonte told Turner that he had talked to three young men west of Nogales on Masonic Drive near the hospital. One was a "hippie" type with long hair and the other two had long hair but not excessively long; that he had stopped to offer assistance which was refused; that they told him they had been out watching the stars and that they had a car at Denny's restaurant in Nogales.

The hospital described by the officer is approximately three miles west of Grand Avenue in Nogales. The international boundary at Nogales is a ten-foot chain link fence which extends about three and one-half miles west from Grand Avenue at which point it becomes a four-strand barbed wire fence some four to four and one-half feet high. There is a Mexican road on one side and an American road on the other. The hospital is located about one-half mile northeast of the point at which the boundary fence becomes a four foot barbed wire fence. Between this fence and the hospital is barren, open country.

The area described is a notorious area for the delivery of narcotics and has been for the five years Inspector Turner has been at Nogales. The visiting hours at the hospital are from 8:00 to 9:00 in the evening. He considered it significant that the three were hippie types because approximately 60% of the narcotics violators he arrests are hippie types. (R.T. 26 of Motion to Suppress).

After the Sheriff's telephone call, Turner got up and drove into Nogales. On the way he received a call on his car radio from a Nogales police officer named De La Osa. De La Osa informed Turner that he had given assistance to three young men on Masonic Drive near the hospital. They told him they had been out rock hunting and that they had a car at Denny's restaurant. The officer asked them if they had friends in the area and they told him they did not; they were by themselves. He gave the trio a ride and let them out at Denny's restaurant. They went in and met two other men in a booth.

Turner established surveillance from a VFW parking lot situated on a high hill overlooking Denny's restaurant and radiophoned agents Clink and Dennis for assistance. At approximately 12:45 a. m. the appellants and one of the three unidentified men left the restaurant and got into a 1968 white Chevrolet Malibu parked at the Time Motel just directly south of the restaurant. Turner obtained the license number, requested a registration check through the Arizona Highway Patrol and learned within a few minutes that the car was a Hertz rental unit from Tucson International Airport. The car drove west on Masonic Drive

and Turner alerted agents Clink and Dennis.

The car returned fifteen to twenty minutes later with the same three men in it. He noted that the car "was noticeably lower in the rear." R.T. 11). The three got out and went into Denny's where the other two unidentified men were waiting. Fifteen or twenty minutes later all came out, the three unidentified men drove off in a Volkswagen and appellants returned to their room numbered 22. Turner quit his surveillance at 4:00 a. m.

The next morning at about 10:00 a. m., responding to a radio call, Turner came upon appellants about four miles north of Nogales with agents Clink and Dennis. Turner opened the back door of appellant's car and noticed a strong smell of marihuana. He was told that appellants contended they had no key to the trunk. They were thereupon returned to Nogales with their car. A key was made, the trunk was opened and three camping pack sacks were found containing 80 bricks or 150 pounds of marihuana. Turner then placed both appellants under arrest, issued Miranda type warnings and left.

Agent Clink's testimony substantiated and was complementary to that of Turner. He joined Turner in surveillance and watched the appellants as they drove along Masonic Drive about 1:00 a. m., to the hospital entrance where they made a complete turn and drove back about 200 yards and stopped. At this point the car was about one-quarter mile from the international boundary. He heard a door open and close and then after a few minutes the car left toward Nogales where Turner picked up the surveillance at the Time Motel.

Surveillance was renewed by Clink about 5:00 a. m. At about 9:15 a. m. appellants left room 22 and placed two suitcases inside the rear of the car. The trunk was not opened. Appellants were followed about four miles north of Nogales where they were stopped and the events related by Mr. Turner were corroborated. On the basis of the events which he related and the information he had obtained, Agent Clink testified that when he stopped the appellants on the highway, he believed they had marihuana in the trunk of the vehicle.

Neither a search warrant nor an arrest warrant had been obtained prior to the time the car was stopped and the search begun. The trial court denied the motion to suppress. We agree.

■ This court held in United States v. Selby, 407 F.2d 241 (9th Cir. 1969) at 242–243 that:

"Probable cause at the time of arrest is determined by examining 'whether at that moment the facts and circumstances within their (the authorities') knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.' Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)."

To the same effect is Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959) where the Court said:

"Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. * * *"

■ As the trial court pointed out, each significantly suspicious circumstance by itself might not suffice for probable cause. Combined, they are conclusive. The physical appearance of the three unidentified hippies with whom the appellants were meeting, the time of night, the notorious character of the smuggling zone where they were, the ridiculous and conflicting explanations by the three of "star watching" and "rock hunting" for their movements in this area and at this hour of the night were enough to arouse the suspicions of police officer De La Osa and Sheriff's Deputy Bracamonte who reported their findings to Turner, an experienced customs offi-

cer. His suspicions were immediately aroused to the point of setting up surveillance. He saw the appellants with one of the hippie-type persons take their car to the smuggling area where the three had previously been observed. A car door slammed. The car returned and was noted to be riding visibly lower in the rear by both Turner and Clink. The car was a rental especially attractive to smugglers because of seizure of a car when contraband is found in it. (R.T. Suppression Proceedings, 59). The statement of the three that they were alone and had no friends in the area whereas they were meeting with appellants—on the basis of this evidence and the inferences which experienced officers and customs officials could draw from it, we cannot say that probable cause for the search did not exist.

### Failure to Obtain Warrant

Appellants further contend that even though probable cause existed, the circumstances were not present to justify a search and seizure without a warrant. Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); Jeffers v. United States, 342 U.S. 48, 53, 72 S.Ct. 93, 96 L.Ed. 59 (1951).

■ If time and circumstance permits, certainly the better practice would be to obtain a search warrant. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). As a matter of hindsight it might appear that both time and circumstance did possibly permit. Viewed from the position of the officers, the situation was entirely different. They did not know how the case would unfold. Three other men had been with the two under surveillance. They might return and others with them. The early hour of the morning might have made it impossible to obtain the warrant. In any event, exercising their best judgment, the officers waited until the car was in motion along the highway before they felt the time was ripe to stop it and search. Given the probable cause which existed as of this time, we do not believe that the search was a Fourth Amendment violation. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Nor does the fact that a portion of the search which had begun on the highway, was necessarily continued to a short time later to permit examination of the trunk, change the legal search to an illegal one. Nor was it dependent for its validity upon the arrest which was later made. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

### The Presumptive Instruction Under 21 U.S.C. 176a

■ The second major issue urged by appellants is the alleged error of the district court in instructing the jury under 21 U.S.C. 176a. Appellants rely on Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). Here, however, the court did not instruct the jury that from possession might be inferred knowledge of illegal importation. It was this presumed knowledge which was proscribed by *Leary*. The validity of the illegal importation inference was expressly left open. Leary, *supra*, at 37, 89 S.Ct. 1532. It has recently been sustained by this court. United States v. Avey, 428 F.2d 1159 (9 Cir. 1970). See also United States v. Adams, 293 F.Supp. 776 (S.D.N.Y.1968). The rational connection between established facts and presumed fact here are even stronger than in *Avey, supra*.[1] We find no error in the instructions.

---

1. The appellants had obtained the vehicle by rent from Hertz at Tucson International Airport; they had travelled to Mexico on September 27, 1968, as appeared from the visas in evidence; the car had presumably been searched on re-entry; the contraband in large quantities was found in the automobile four miles north of the Mexican border on October 1, 1968; the car had been under almost constant surveillance since 10:30 p. m. September 30, 1968; the marihuana was packaged and wrapped characteristically of that coming from Mexico;

### Other Claimed Errors

■ Appellants also assert that the penalty under 21 U.S.C. 176a amounts to cruel and unusual punishment. This argument has been rejected in Bettis v. United States, 408 F.2d 563, 569–70 (9th Cir. 1969).

■ The motion for severance was denied and appellants assert error. The matter of severance is within the discretion of the trial judge. Fed.R.Crim.P. Rule 14; United States v. Meyer, 404 F.2d 254, 255 (9th Cir. 1968), *cert. denied*, 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969). We find no abuse of discretion here.

Appellant Holland moved to dismiss the charge against him because there was insufficient evidence of possession as to him. The court denied the motion.

■ We have reviewed the instructions given on possession and constructive possession and find that those instructions were correct. No contention is made in the briefs of appellants to the contrary. The same is true with respect to the instruction on circumstantial evidence. The evidence was sufficient to warrant the instruction and justify a finding by the jury that Holland was in constructive possession and guilty of the offense charged. Eason v. United States, 281 F.2d 818 (9th Cir. 1960).

The judgment is affirmed.

there was FBI evidence that a palm print of the appellant Sherman was found on one of the marihuana wrappings; Mexico is a known principal source of supply of illegally imported marihuana; there could be no reason to import that much marihuana into Mexico from the United States; the car was headed north and away from Mexico and into the United States when stopped; there was no evidence of a known domestic supply for marihuana in the quantity at this location; finally, the suspicious and clandestine circumstances which occurred under the surveillance of the customs agents. All combine to make it "more likely than not" that the presumption of illegal importation is valid.