**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jack COHN, Defendant-Appellant.**

**No. 72–1768.**

United States Court of Appeals,
Ninth Circuit.

Jan. 3, 1973.

Rehearing Denied Feb. 13, 1973.

Anthony C. Aguilar (argued), Joseph Abraham, Jr., El Paso, Tex., for defendant-appellant.

Thomas N. Crowe, Asst. U. S. Atty. (argued), Wm. C. Smitherman, U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before CHAMBERS and CHOY, Circuit Judges, and BYRNE,* District Judge.

BYRNE, District Judge:

Jack Cohn, appellant, was convicted by jury of conspiracy to smuggle and possession with intent to distribute thirty-nine (39) kilo bricks of marihuana, violations of 21 U.S.C. § 846 and § 841(a)(1) and (b) respectively. On this appeal, Cohn claims that the trial court committed error by refusing to suppress

---

* Honorable William M. Byrne, Sr., United States Senior District Judge, Central District of California, sitting by designation.

the above-mentioned contraband which was discovered by an Arizona state narcotics officer during a warrantless search of a Buick automobile.

The facts are not in dispute. At approximately 9:00 P.M., on September 9, 1971, Arizona state narcotics officers Capp and Jones were seated in a motel coffee shop in Yuma, Arizona, when they observed three individuals (later identified as Cohn, Felix Armenta-Borjorquez, and Robert Gluck) who were seated in a nearby booth. The officers' attention was attracted to these individuals because "they continually looked around" and their "conversation . . . appeared guarded." Therefore, when Cohn and Armenta-Borjorquez walked out of the coffee shop, the officers decided to follow them. The officers observed the pair get into an Oldsmobile automobile that was parked outside. Armenta-Borjorquez took the driver's seat and Cohn seated himself on the passenger's side of the front seat. The officers followed the Oldsmobile in their own unmarked vehicle until they lost visual contact in downtown Yuma.

However, a few minutes later, the officers spotted Armenta-Borjorquez walking alone in the same area where they had previously lost sight of the Oldsmobile. They watched him walk up to a Buick automobile that was parked on First Avenue, get into it, and drive away. They followed. In doing so, they noticed that the Oldsmobile which they had been following earlier was parked about one block from where Armenta-Borjorquez had got into the Buick. The officers followed the Buick across town and observed it stop behind a residence of an individual known for his involvement in marihuana-trafficking. At that residence, Armenta-Borjorquez got out of the Buick and met an unknown person in the backyard. Thereafter, the officers returned to where the Oldsmobile was still parked and they waited. A short time later, they observed Armenta-Borjorquez drive the Buick back to

the exact location from which he had taken it, park it, get out, walk north one block to the Oldsmobile, get into it, and drive away. Rather than following Armenta-Borjorquez in the Oldsmobile, the officers stayed at their location and kept the Buick under surveillance.

At approximately 11:15 P.M., the two officers and another state narcotics officer who had since joined in the stakeout exited their vehicles and approached the Buick. They had no search warrant and had made no effort to obtain one. At a distance of five feet from the automobile, they noticed a very strong odor of marihuana that appeared to be coming from a half-open window on the passenger's side. Officer Capp used his flashlight to look inside and saw a few inches of a brick-shaped object that was protruding from under the passenger's side of the front seat and appeared to be marihuana. He opened the Buick's door, picked up the object, confirmed the fact that it was a kilo brick of marihuana, and replaced it in the same position as he had found it. In addition, he reached over the front seat, pressed his fist against the back seat, and noticed that it was unusually hard. Thereafter, the officers returned to the vehicles and resumed their stakeout.

At approximately midnight, two agents from the U. S. Bureau of Customs arrived on the scene, were briefed by the state officers, went to the Buick and confirmed the information obtained by Officer Capp during his search, and thereupon took over the stakeout. For the next nineteen hours, nothing unusual occurred pertaining to the Buick except that the Customs agents ascertained that it was registered in the name of Cohn's mother. However, at 7:00 P.M., on September 10, 1971, Gluck (whom the state officers had observed in the motel coffee shop with Cohn and Armenta-Borjorquez) walked up to the Buick, got into it, and proceeded to drive it on Interstate Highway 8 until he was pulled over some eighteen miles outside of

Yuma by Customs agents who arrested him, searched the Buick thoroughly, and seized thirty-nine kilo bricks of marihuana.

At Cohn's trial on February 18, 1972, he was convicted of the previously-mentioned offenses almost entirely on the basis of Gluck's testimony to the effect that it was Cohn who had employed him to drive the Buick and to deliver the marihuana to a motel parking lot in Phoenix, Arizona.

Cohn contends that, even if Officer Capp had probable cause to search the Buick at the time that he did so, the circumstances did not justify such a search without a warrant. He bases this contention on cases dealing with unlawful searches of unoccupied automobile, e. g., Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Payne, 429 F. 2d 169 (C.A.9, 1970).

On several occasions, the Supreme Court has pointed out that, if there is probable cause to search, warrantless searches of automobiles may be lawful when "exigent circumstances" are present. Coolidge v. New Hampshire, supra, 403 U.S. at 474–475, 91 S.Ct. 2022; Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925). If such circumstances are present, the legality of these searches are permissible under a "limited exception" to the warrant requirements of the Fourth Amendment. Coolidge v. New Hampshire, supra, 403 U.S. at 479, 91 S.Ct. 2022.

We are persuaded that such circumstances existed at the time that Officer Capp searched the Buick. Al-though unoccupied, that automobile was parked on a public street, had been moved shortly before the search and driven to the rear of the residence of a known marihuana-trafficker, and was subject to being moved again without warning and driven outside the jurisdiction. In addition, the fact that a strong odor of marihuana was exuding through a half-open window of the automobile and that part of a kilo brick of marihuana was open to plain view reinforce the reasonableness of Officer Capp's decision to search without a warrant.

Cohn further contends that, even though the search by Officer Capp may have been lawful, a warrant to search the Buick "could have and should have been procured" by either the state officers or the Customs agents. In support of this contention, he emphasizes the fact that a period of almost twenty hours transpired between the time that Officer Capp searched the automobile and the moment Gluck entered it in order to drive it away.

The warrant requirement of the Fourth Amendment must be tempered with common sense. It would have been a meaningless gesture for those officers of the law to have procured a warrant to search for contraband which had already been discovered during an earlier lawful search (discussed supra). Cf. Westover v. United States, 394 F.2d 164, 165 (C.A.9, 1968). In addition, Cohn bases this contention on "hindsight" which is improper criteria for determining whether or not a search warrant is required. United States v. Sherman, 430 F.2d 1402, 1406 (C.A.9, 1970).

The judgment is affirmed.