UNITED STATES of America,
Appellee,

v.

James Frederick CHURCH, Appellant.

No. 73–2218.

United States Court of Appeals,
Ninth Circuit.

Dec. 7, 1973.

Rehearing Denied Jan. 4, 1974.

Alexander Anolik, San Francisco, Cal., for appellant.

Harry D. Steward, U. S. Atty., William A. Bower, Asst. U. S. Atty., San Diego, Cal., for appellee.

## OPINION

Before ALDRICH,[*] DUNIWAY and SNEED, Circuit Judges.

SNEED, Circuit Judge:

James Frederick Church, appellant, was convicted of possession with intent to distribute 477 pounds of marijuana in violation of 21 U.S.C. § 841(a)(1). On appeal, Church raises the issue of whether the trial court committed error in refusing to suppress contraband discovered by agents of the United States Bureau of Customs during a warrantless search of the automobile which he was driving.

There is no dispute as to the facts in this case. At approximately 5:00 a. m. on December 6, 1972, personnel of the United States Border Patrol and United States Customs Service began a surveillance of the Wisteria Check area of the All American Canal [1]—an area known by

[*] Hon. Bailey Aldrich, Circuit Judge, First Circuit, sitting by designation.

1. The Wisteria Check area of the All American Canal is located 100 feet from the Mexican-American border and approximately three and one-half miles west of Calexico, California. The All American Canal paral- lels the Mexican-American border for some two to three miles east of the Wisteria Check and for seven miles west of the Check before it turns north. There are dirt roads leading south from the Wisteria Check into Mexico, and another road which runs just south of the border from Mexicali to the Check and beyond.

them to have a high incidence of marijuana and alien smuggling. Shortly after 6:00 a. m., the agents observed an individual on the Check who quickly disappeared upon the approach of a passing irrigation truck. After the truck had departed, two men were seen to enter the Check and unlock the gate which blocked passage over the bridge which crossed the Canal at that point. As the gate was being unlocked, the agents also observed four automobiles approach the Canal just west of the Check. At approximately 6:30 a. m., the vehicles crossed the Canal and proceeded to head north.

The vehicles drove north from the Canal toward Highway 98 and then west on Highway 98. No attempt was made to stop any of the vehicles at this time; however surveillance was continued by one of the agents. When the vehicles reached Clark Road, which is some fifteen minutes drive from El Centro, California, the caravan broke into two groups and the agent lost visual contact with two of the vehicles, one of which was the automobile later stopped and searched while being driven by Church. A second diversionary tactic left only one of the vehicles under visual surveillance, which continued on into El Centro. After being notified by radio that the automobiles which had remained on Highway 98 were no longer under observation, additional surveillance units merged in El Centro in the hope of regaining contact. In downtown El Centro one of the units spotted two parked vehicles which were recognized by the agent as being the same as those observed earlier on the Check. Surveillance was reinstituted at approximately 6:50 a. m., and by 7:00 a. m. five agents had converged on the unoccupied vehicles. The agents approached the automobiles, detected the odor of marijuana emanating from them and observed a kilo brick of marijuana in plain sight inside the vehicle which was the subject of the search at issue here.

After they had ascertained that the vehicles were carrying marijuana, three of the agents remained in El Centro to continue the surveillance. Over the next four hours neither of the vehicles were moved or approached until, at 11:00 a. m., Church entered one of the automobiles and drove it away. The vehicle was driven to a nearby motel, where it remained for some forty minutes, and was finally stopped shortly after Church had left El Centro heading west. As the agents approached the stopped vehicle, they again smelled the odor of marijuana emanating from the open door. The vehicle was searched immediately, without warrant, and 217 kilos of marijuana were seized.

Church contends that, even if the agents had probable cause to search the automobile at the time when it was finally stopped, the circumstances did not justify a search without a warrant. He bases his contention on four grounds: (a) that the search cannot be justified under the automobile exception of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); (b) that the search cannot be classified as a "border search" under Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); (c) that the "plain view" doctrine, as expounded in Coolidge v. New Hampshire, *supra,* is inapplicable; and (d) that the search cannot be justified as a "search incident to an arrest" under Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1968). Because this case is controlled by our prior holdings in United States v. Cohn, 472 F.2d 290 (9th Cir., 1970), only the first issue is reached.

As in *Cohn, supra,* there were "exigent circumstances" at the time the agents first approached the parked vehicle and therefore a search without a warrant would have been justified at that time. Coolidge v. New Hampshire, *supra*; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, *supra.* Although unoccupied, the automobile

was parked on a public street, was known to have just come from an area having a high incidence of marijuana smuggling, and was subject to being moved again at any time and driven outside the jurisdiction. These factors, coupled with the early hour at which the vehicle was initially observed, the agents' discovery of a kilo brick of marijuana in plain view inside the automobile and their detection of the odor of marijuana, provided more than ample justification for a warrantless search of the vehicle. United States v. Cohn, *supra,* 472 F.2d at 292.

The fact that the agents did not conduct an immediate search of the automobile when they first approached it is not a distinction which would take this case outside our holding in *Cohn.* While our decision in that case was in part based on our belief that it would have been a meaningless gesture to require the officers to obtain a warrant to search for contraband which had already been lawfully discovered, it was also based on our belief that "hindsight" is an improper criterion for evaluating the need for a warrant. United States v. Cohn, *supra,* 472 F.2d at 292. *See also* United States v. Sherman, 430 F.2d 1402, 1406 (9th Cir., 1970). That reasoning is equally applicable to the facts presently before us.

Judgment affirmed.

ALDRICH, Senior Circuit Judge, (concurring in the result).

While I agree with the result, I think the court's reliance on United States v. Cohn, 472 F.2d 290 (9th Cir. 1970) in part exaggerates the holding in that case, and in part attaches weight to a dictum therein that, with due respect, I cannot accept. In *Cohn,* as soon as they found the car parked on the street the officers, clearly having probable cause, made a search and discovered a quantity of marijuana. Instead of seizing it, they withdrew and watched the car for nineteen hours. During this interval there was a change of guard, and ample

opportunity to obtain a warrant, but none was sought. When, ultimately, defendant appeared and drove off, the officers pursued and arrested him. They then searched the car again, and seized the contraband. In upholding the second search the court pointed out that the original search, being based on probable cause and "exigent circumstances," was legal, and that it would be a "meaningless gesture" to seek a warrant for a second one. I agree that the first search could be found lawful and, since there was no first search in the case at bar, need not quarrel with the conclusion the court drew from it. At the same time one must note that what is justification to enter without a warrant at one time does not necessarily carry over to another. *See, e. g.,* Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777. As to *Cohn's* final remark, that the claim that the officers had time to obtain a warrant during their nineteen hour vigil was "hindsight," with due respect I think there must be a better approach.

In the case at bar the officers merely looked at the automobile when first discovered parked on a public street, and from that vantage point both smelled marijuana and saw what appeared to be a kilo brick thereof through the window. Had this smell come through the door of a hotel room, Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), or the view been through the transom, McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), it would not have been sufficient to justify entrance therein.

> "[P]lain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable

cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." Coolidge v. New Hampshire, 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971).

An automobile on a street commonly presents "exigent circumstances." Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). But as Coolidge v. New Hampshire plainly holds, the circumstances of a search must be viewed as a whole, and even as to an automobile search the question remains whether the circumstances at the time of the search indicated that the delay or inconvenience in obtaining a search warrant would likely thwart the efforts to conduct the search, or result in the disappearance of the objects sought.

I will assume that if the officers had been apprehensive and had searched the car at once, they might have claimed the *Carroll* exception in spite of the fact there was a known available magistrate only a block away. Instead, they made no attempt to obtain a warrant, but chose to do nothing for four hours even though as many as five agents were at times present and there was radio contact with potential reinforcements. If they could safely postpone the search to wait for a suspect to appear, they could equally wait for a warrant, subject, of course, to the possibility of interruption if the suspect came first. The longer they did nothing in such circumstances, the less credible would seem a claim that because of the urgency of the situation it was impracticable to call on the magistrate for a warrant. I would have been greatly concerned if, after four hours, they had chosen to enter the unattended car without one. Where the burden of obtaining a warrant can be readily met, officers should exercise forethought rather than claim they are blameworthy only by hindsight.

It seems apparent, however, that the officers' primary interest was not directed to the car, but was to lie in ambush, with the car as bait. This is not a case where the officers, having grounds and opportunity to obtain a search warrant, waited and sought to substitute seeing someone committing a felony on the premises as an excuse for making a warrantless entry. *Cf.* Niro v. United States, 388 F.2d 535 (1st Cir. 1968). Here the officers did not need an excuse to enter, but chose, instead, to concentrate on making an arrest. When the defendant arrived and drove off in a car known to contain contraband, he was committing a felony in their presence, and they had an immediate right to arrest him. I see no reason why they could not then assert, in connection with the arrest, exigent circumstances with respect to the car. Carroll v. United States, ante; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *see* Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). In spite of the limitations that a rigid application of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) might suggest, I would be loath to say that police, having probable cause to arrest the occupant in an automobile on a public street, should not have the freedom of searching the exposed portion of the car without first rebutting a claim that they could adequately protect its contents by removing the occupant and setting up a guard detail while securing a warrant. On this basis I join in the affirmance.

DUNIWAY, Circuit Judge (concurring):

I concur in affirming the judgment. I agree that our decision in United States v. Cohn, 9 Cir., 1973, 472 F.2d 290, is in point. Judge Aldrich points to the fact that in *Cohn*, the officers did search at the time of the stakeout and then replaced the contraband, and used the car and its contents as bait to catch the criminals, while in our case the officers, although they obtained probable cause from the odor and from seeing a kilo brick of marijuana in the car, did

not search, but, as in *Cohn*, used the car and its contents as bait. I cannot see, however, how that difference has legal significance. As a matter of fact, the first search in *Cohn* only produced one kilo brick of marijuana, which was replaced, plus a reasonable belief that there was more behind the seat. The second search was far more extensive; it produced thirty-eight more kilo bricks. What difference should it make that in *Cohn* the officers took out the one brick that was in plain sight and then replaced it, while in our case they merely saw it and left it undisturbed? I think that, if the second search in *Cohn*, which produced thirty-eight previously undiscovered kilos of marijuana, was valid, the search in our case was also valid. Hence I agree with Judge Sneed that *Cohn* is controlling.

Like Judge Aldrich, however, I have trouble with the rationale of *Cohn*. I agree, as he does, that in *Cohn* and in our case exigent circumstances would have justified (did justify in *Cohn*) an immediate search when the fact that the car contained contraband first became known. I also think, as Judge Aldrich does, that this is not enough to justify making the second search without a warrant. To so hold seems to me to fly in the face of the decision in Preston v. United States, 1964, 376 U.S. 364, 84 S. Ct. 881, 11 L.Ed.2d 777. In that case, the police had probable cause to search at the time when they arrested the defendants. They did not, however, search at that time, but instead waited until later when the defendants were booked at police headquarters and the car was sitting immobile in a garage. The Court said: "[T]he police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place." 376 U.S. at 368, 84 S.Ct. at 883. The Court then proceeded to hold the search invalid, because *at that time* no exigent circumstances justified the failure to obtain a warrant. *Preston,* then, requires that we look at the circum-

stances under which the search was made. The search cannot be justified merely because a previous partial search was made (*Cohn*) or could lawfully have been made (our case).

I think it entirely proper, when officers know, or have probable cause to believe, that a vehicle contains contraband, for them to use it as bait to catch the criminals. Doing so is good police work and violates no rights. When, as in *Cohn* and in this case, the car has been left in a public place, and the criminals may at any time appear and drive it away, I think that exigent circumstances permit an immediate search. However, such a search is not required. The officers may well conclude that they might be discovered while searching, and lose their quarry. So, if they choose, they can wait for their quarry to appear without searching. When the quarry does appear, enter the car and drive off, an arrest can be made and the car searched—with a warrant if one has been obtained, without one if the circumstances *at that time* bring the case within one of the exceptions to the warrant requirement.

Here, as in *Cohn*, the circumstances at the time of the search (I refer to the second search in *Cohn*) do, as Judge Aldrich points out, come within one of those exceptions—the arrest of the driver of a car on a public street. Here the officers did what the Court said that the officers could have done in *Preston, supra*, but did not do. They searched the car when they made the arrest. I also agree with Judge Aldrich that here and in *Cohn* there was no subterfuge undertaken to avoid having to get a warrant. I think that it is on the foregoing grounds, rather than the ground stated in *Cohn*, that the second search in *Cohn* should have been upheld.

I would be happier, however, if the officers in this case and in *Cohn* had obtained a warrant while they waited, as I believe they could easily have done. If in future cases there appears to be abuse of the *Cohn* decision and of this one, I may conclude that the *Cohn* deci-

sion and this one should be reexamined. As the Supreme Court has repeatedly said, when a warrant can be obtained, it ought to be obtained. Officers of the law can save themselves and the courts a great deal of trouble if they will bear that rule in mind and act upon it instead of taking a chance that their failure to obtain a warrant may later be condoned by the courts.