UNITED STATES of America,
Plaintiff-Appellee,

v.

Tommy Joe COPLEN,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Henry Valentin VALENZUELA,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

John Balmer McKITTRICK,
Defendant-Appellant.

Nos. 75–3633, 75–3739, 75–3663.

United States Court of Appeals,
Ninth Circuit.

Aug. 16, 1976.

Modified on Denial of Rehearing
Sept. 17, 1976.

Clark L. Derrick (argued), of Flynn, Kimerer, Thinnes & Derrick, Phoenix, Ariz., for appellant Coplen.

Michael Tryon, Asst. Federal Public Defender (argued), Phoenix, Ariz., for appellant McKittrick.

Joseph H. Soble (argued), of Soble & Cole, Tucson, Ariz., for appellant Valenzuela.

Ron Jennings, Asst. U. S. Atty. (argued), Phoenix, Ariz., for plaintiff-appellee.

## OPINION

Before BARNES and KENNEDY, Circuit Judges, and EAST,* District Judge.

BARNES, Senior Circuit Judge:

On November 5, 1974, United States Customs Agent Kontrabecki conducted a routine investigation to discover smuggling activity at Freeway Airport, Tucson, Arizona. During this investigation, he discovered marijuana debris in an aircraft registered to Tommy Joe Coplen. Thereafter, Coplen and his aircraft were kept under surveillance by federal authorities.

On February 20, 1975, defendant Valenzuela (under observation) drove Coplen to Freeway Airport. Thereafter, Coplen departed in his plane (under observation) and flew into Mexico, south of Caborca, Mexico, located approximately sixty miles from the American border. Coplen departed for this flight without filing the required flight plan. He also failed to activate the aircraft navigation lights when it became dark, at approximately 6:30 to 7:15 p. m.

After dropping Coplen off at the airport, Valenzuela met defendant McKittrick at a restaurant. They then entered their separate vehicles and left Tucson, heading north on Interstate 10 (under observation). Both vehicles left Interstate 10 at the Toltec Road Exit and proceeded south towards Arizona City, finally entering Silver Bell Estates, a known narcotics drop point. Once into Silver Bell Estates, the vehicles extinguished their headlights.

Approximately an hour later aerial surveillance observed the headlights of two stationary vehicles facing each other approximately one-half mile apart. Although Customs Air Officer Eschelman was unable to testify that these vehicles were the same ones he had been following earlier, he stated that no other vehicles were observed entering the area. He further testified that the headlights appeared to have been lighting up a runway located on a dry lake bed. Shortly before the vehicular headlights appeared, ground surveillance units heard an aircraft but were unable to detect its location since it was operating without navigational lights. Shortly after the vehicular headlights were turned on, aerial surveillance observed an aircraft in the vicinity of the lights. Shortly thereafter, the vehicles extinguished their headlights.

At 9:25 p. m., approximately fifteen minutes after the vehicle headlights were turned off, aerial surveillance units using infra-red equipment detected two vehicles leaving the dry lake bed area. Ground surveillance units observed the vehicles leaving the area, heading toward Interstate 10, and entering the Interstate northbound to Phoenix. Agent Seaver testified that the curtains on the camper portion of one of the vehicles were closed on departure, while they had been opened when the vehicles arrived at Silver Bell Estates.

While ground surveillance units were returning to Interstate 10, aerial surveillance units proceeded to Sky Harbor Airport in

---

* Honorable William G. East, Senior District Judge, District of Oregon, sitting by designation.

Phoenix. Upon arrival, the officers observed that Coplen's aircraft had landed without clearing customs and that Coplen was not present. Agent Young approached the aircraft and with the aid of a flashlight looked into the back window on the pilot's side. He saw marijuana debris in the aircraft. He then felt that the engine was warm. Thereupon, the officer advised the surveillance units of his information.

The vehicle driven by Valenzuela left Interstate 10 and was stopped by agents. A search of the camper revealed no contraband. This information was relayed to the agents following McKittrick's vehicle who then stopped him. A search of McKittrick's camper revealed 500 pounds of marijuana. Thereupon, both Valenzuela and McKittrick were arrested. Attempts to locate Coplen, however, proved unsuccessful. After waiting until the identification team had taken fingerprints off the plane, the agents, with the aid of a lock-pick set, entered the aircraft and seized the marijuana debris. Coplen was arrested the following morning.

The three defendants were charged as follows: Count I—all three defendants were charged with conspiracy to import 500 pounds of marijuana; count II—Coplen alone was charged with importation of the same five hundred pounds of marijuana; count III—all three defendants were charged with possession with intent to distribute the same 500 pounds. The defendants moved to suppress the marijuana debris taken from Coplen's airplane and the 500 pounds of marijuana found in McKittrick's vehicle, alleging that their fourth amendment rights had been violated. Each motion was denied. After trial, all three defendants were convicted on counts I and III and Coplen alone on count II.

The first issue that we consider on appeal is whether appellants' fourth amendment rights were violated when the federal agents search Coplen's aircraft and seized the marijuana debris. The uncontroverted evidence is that Agent Young discovered the marijuana debris when he looked into the aircraft with the aid of a flashlight. Subsequently, the agents, with the aid of a lock-pick set, entered the airplane and seized the marijuana debris.

Our first inquiry is whether Agent Young's conduct in looking into the airplane constituted a search. The law is clear that it was not. It is well settled that visual observation by a law enforcement officer situated in a place where he has a right to be is not a search within the meaning of the fourth amendment. *See United States v. Conner,* 478 F.2d 1320, 1323 (7th Cir. 1973); *United States v. Hanahan,* 442 F.2d 649, 653 (7th Cir. 1971); *United States v. Freeman,* 426 F.2d 1351, 1353 (9th Cir. 1970); *Ponce v. Craven,* 409 F.2d 621, 625 (9th Cir. 1969). This Court, however, must also determine whether the looking into the aircraft violated appellants' reasonable expectation of privacy. If an individual knowingly exposes his conduct to public view, his reliance upon privacy is unreasonable and unjustified. *Katz v. United States,* 389 U.S. 347, 351–52, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *see United States v. Santana,* —— U.S. ——, ——, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). In *Ponce v. Craven, supra,* police officers, while standing in a motel parking lot, witnessed illegal activity by looking into the defendant's bathroom window. In rejecting the contention that such conduct constituted a search and that such search was illegal, this Court stated:

"Ponce's reliance on privacy in his motel room was not reasonable under the circumstances. If he did not wish to be observed, he could have drawn his blinds. The officers did not intrude upon any reasonable expectation of privacy in this case by observing with their eyes the activities visible through the window. . . . ."

409 F.2d at 625; *see United States v. Hersh,* 464 F.2d 228, 229–30 (9th Cir.), *cert. denied,* 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 301 (1972).

Similarly here, we decline to conclude that the agent's conduct in looking into the airplane constituted a search within the meaning of the fourth amendment. In this case, the agent was lawfully within the area where Coplen's aircraft was

parked. He proceeded to the aircraft and looked into the back window which was open to the public view. The fact that the officer was forced to use a flashlight is immaterial. Being dark outside, it was necessary to employ such a device. Rather, if privacy were desired here, Coplen should have closed off the window from public view. By failing to do so, thus permitting the agent by mere observation to view the marijuana debris, there was no reasonable expectation of privacy insofar as looking into windows is concerned.

We next consider the question whether the officers, by breaking into the plane and seizing the marijuana debris without a search warrant, violated appellants' fourth amendment rights. Upon viewing the marijuana debris through the plane window, it is clear that the agents had probable cause to search and seize the aircraft. But, as observed by Justice Stewart in *Coolidge v. New Hampshire,* 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971), "no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" Thus, the essential inquiry here is whether exigent circumstances existed to justify the warrantless search and seizure.

■ We conclude that sufficient such exigent circumstances were present here. Coplen's airplane was parked on a runway and was "readily accessible to anyone who might want access." *United States v. McClain,* 531 F.2d 431, 434 (9th Cir. 1976). Agents reasonably believed that other confederates were involved in the scheme. As importantly, easily destroyed contraband was involved. Taking these factors into account, we have a situation where an aircraft was capable of removal and the marijuana debris also was capable of being destroyed. Accordingly, we hold that the search of Coplen's airplane and the seizure of the marijuana debris did not violate the fourth amendment. *See United States v. McClain, supra,* 531 F.2d at 433–35; *United States v. Church,* 490 F.2d 353, 354–55 (9th Cir. 1973), *cert. denied,* 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974); *United States v. Cohn,* 472 F.2d 290, 292 (9th Cir. 1973).

■ We next consider the second issue raised by appellants, namely, that the district court erred in denying defendant McKittrick's motion to suppress the 500 pounds of marijuana seized from his camper. Appellants argue that this search and seizure violated their fourth amendment rights. We do not agree. The evidence presented to the trial court overwhelmingly indicates that the agents had probable cause to conduct the search and seizure in question. Both Valenzuela and McKittrick were seen with Coplen on several occasions. On the day of the alleged transaction, both vehicles were seen in the Silver Bell Estates area. Approximately an hour after McKittrick and Valenzuela arrived at the area, agents detected the sound of a low-flying aircraft. Shortly thereafter, vehicular headlights were facing each other on the dry lake bed as though lighting up an airstrip. Shortly after the airplane had departed from the dry lake bed, two vehicles were observed running without headlights. When the vehicles McKittrick and Valenzuela were driving departed from the area, the curtains on them were closed while they had been opened when the vehicles entered the area. Further, Valenzuela had driven Coplen to the airport for his flight and then had met McKittrick before they both drove out to the Silver Bell Estates area. Marijuana debris subsequently was discovered in Coplen's aircraft and this information was communicated to the other agents who then stopped and searched the vehicles. With this abundance of information, we clearly cannot hold that the district court's decision denying the motion to suppress was error. *See United States v. Westover,* 511 F.2d 1154, 1155–56 (9th Cir.), *cert. denied,* 422 U.S. 1009, 95 S.Ct. 2633, 45 L.Ed.2d 673 (1975); *United States v. See,* 505 F.2d 845, 855 (9th Cir. 1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1428 (1975).[1]

1. We note that the government has not argued that the defendants lack standing to contest the searches and seizures in question. Upon examining the record, we observe that there is a

■ As a separate and distinct point on appeal, defendant Coplen submits that the district court committed reversible error by denying his motion for judgment of acquittal. Viewing the evidence in a light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), Coplen argues that there was insufficient evidence to support his convictions. We disagree. The standard we employ is whether the jurors could reasonably arrive at their conclusions that Coplen was guilty of the charged offenses beyond a reasonable doubt. *See United States v. Rojas,* 458 F.2d 1355, 1356 (9th Cir. 1972); *United States v. Nelson,* 419 F.2d 1237, 1243 (9th Cir. 1969).

■ Applying this standard, the trial court correctly denied Coplen's motion. Coplen was seen with his co-defendant Valenzuela prior to the day of arrest. On the day in question, Valenzuela had driven him to the airport. Although none of the agents saw Coplen land in Mexico, his plane was seen sixty miles inside Mexico. During this flight, Coplen flew without filing the required flight plan and failed to clear customs after landing. Coplen makes much of the fact that no authorities saw him land in the Silver Bell Estates area. However, agents heard the sounds of a low-flying aircraft and observed the turning on of vehicular headlights apparently lighting up a runway on the dry lake bed. Further, marijuana debris shortly thereafter was found in Coplen's airplane. Viewing the evidence in a light most favorable to the government, we conclude that Coplen's convictions are supported by sufficient evidence.

■■ As another separate and distinct point on appeal, defendant Valenzuela argues that the district court abused its discretion by denying his motion to sever. In support of his motion, Valenzuela contends

that he was denied the use of exculpatory testimony of his codefendants who refused to testify at the joint trial because they would incriminate themselves. We note that the defendant must make some showing that the testimony of a codefendant will be used at his trial before the denial of a motion to sever will be held to be an abuse of discretion. Hence, "[t]he unsupported possibility that such testimony might be forthcoming does not make the denial of a motion for severance erroneous." *United States v. Bumatay,* 480 F.2d 1012, 1013 (9th Cir. 1973). Further, "[t]he bare assertion that [defendant] could not call either co-defendant as a witness does not warrant reversal on the theory that if he could he would have done so." *Id. See United States v. Larios-Montes,* 500 F.2d 941, 944 (9th Cir. 1974), *cert. denied,* 422 U.S. 1057, 95 S.Ct. 2681, 45 L.Ed.2d 709 (1975); *United States v. Thomas,* 453 F.2d 141, 144 (9th Cir. 1971), *cert. denied,* 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972). Here, Valenzuela failed to make any showing other than his mere assertion that a joint trial would be prejudicial. Under the law in this Circuit, such a showing is inadequate. Accordingly, the district court was correct in denying the motion.

Having considered the issues raised on appeal and finding no merit in them, the convictions are *affirmed.*

---

substantial issue whether all of the defendants have standing to contest each search and seizure. It is clear, however, that at least one defendant has standing in regard to each search and seizure. Since we hold that the

searches and seizures do not violate the fourth amendment, we find it unnecessary to determine whether each defendant has standing to contest each search and seizure.