555 F.2d 703
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph SILLA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victor James ZIMBARDI, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
William E. BEST, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Terry POLSON, Defendant-Appellant.
 Nos. 76-2924, 76-3002, 76-3003, 76-3719.
 United States Court of Appeals,
Ninth Circuit.
 June 10, 1977.
 
 Robert W. McKinley, La Mirada, Cal., argued, for defendants-appellants.
 William D. Keller, U.S. Atty., Dean B. Allison, Asst. U.S. Atty., Los Angeles, Cal., argued, for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before CARTER and SNEED, Circuit Judges, and WOLLENBERG*, District Judge.
 JAMES M. CARTER, Circuit Judge:
 
 
 1
 This is an appeal by four defendants from their convictions for possession of a controlled substance (marijuana) with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).
 
 
 2
 Appellants argue (1) that their motion for severance should have been granted, (2) that evidence from a search and seizure was improperly admitted, (3) that the court improperly charged and voir dired the jury, and (4) that there was insufficient evidence to support the verdict. Zimbardi also objects to the failure of the trial court to make a specific finding as to his possible benefit from sentencing under the Federal Youth Corrections Act. We affirm.Facts
 
 
 3
 In November 1975, Drug Enforcement Administration (DEA) agents found the registration certificate for a trailer bearing California license plate VW3426 in a truck known to be owned and used by drug smugglers. These agents were investigating a criminal organization known to import drugs secretly packed into the interior compartments and floor of trailers. While these trailers appeared to be empty, they were loaded with contraband.
 
 
 4
 On December 3, 1975, a truck-trailer bearing California license VW3426 entered the United States at Calexico. DEA agents followed the trailer to Ocotillo, California (about 20 miles north of the border), where it entered a truck stop parking lot. The driver parked the truck, unhitched the trailer, and drove away back towards the border. Two minutes later, an individual, later identified as Richard Castellano, came out of an adjacent coffee shop and hitched the trailer to his own truck.
 
 
 5
 DEA agents then approached Castellano and asked if they could speak with him. He told them that he was hired to drive the trailer to Los Angeles. The agents asked for and received the permission of Castellano to search the trailer. They found approximately 3,000 pounds of marijuana hidden under the floor of the trailer. Castellano was arrested.
 
 
 6
 Castellano agreed to cooperate with the agents by following through with his instructions for delivery of the trailer. He drove to the "E-Z-8" motel in Pico Rivera where he checked in under the name Garcia. Appellant Polson arrived later and asked the motel office for the room of "Garcia." After a brief meeting, Polson and Castellano left the motel and drove separately to a truck yard. There Polson unlocked the gate and directed Castellano to park the trailer in the yard. Polson locked the gate and both men left the area.
 
 
 7
 Surveillance was maintained on the truck throughout the night. The next morning Polson arrived at the truck yard and hauled the trailer away over to a warehouse of which he was the supervisor. About 45 minutes later, DEA agents converged on the warehouse where they found the four appellants (and a fifth defendant who has not appealed).
 
 
 8
 Polson was arrested in the yard. Appellants Best and Zimbardi were arrested inside the trailer where they were using power drills to remove the wall panels. Defendant Silla was arrested near the rear of the trailer where 17 newly assembled cardboard boxes were lined up. There were other unassembled boxes next to a table on which there was a wet towel and a roll of gummed tape. The agents testified that they could smell marijuana in the vicinity.
 
 
 9
 After making the arrests, the agents disassembled the trailer and removed the marijuana. Polson was interviewed and said that the trailers were to be taken to the warehouse, unloaded, and the marijuana then given to other persons whom he did not know. A subsequent motion to suppress the marijuana as evidence was denied.
 
 
 10
 Defendants were tried together on the one-count indictment beginning July 20, 1976. The jury returned a verdict of guilty as to all defendants on July 23. Polson was sentenced to three years imprisonment with a special parole term of three years plus a $15,000 fine. Zimbardi received one year with a three-year parole term. Best and Silla were sentenced under the Federal Youth Corrections Act to terms of six months with three years probation. This appeal followed.
 
 Jury Instructions on Crime
 
 11
 In its charge to the jury, the trial court stated the essential elements of the charged crime.
 
 
 12
 "(T)he government must prove beyond a reasonable doubt . . . one, that the defendant possessed marijuana, a controlled substance, and, two, that the defendant did possess with a specific intent to distribute marijuana, a controlled substance. And, three, that the defendant did so knowingly and intentionally."
 
 
 13
 The court also defined the term distribute and instructed the jury on specific intent. Additionally, the statute itself was read to the jury. These instructions were correct.
 
 
 14
 Moments later, however, the judge extemporaneously instructed the jury further:
 
 
 15
 "In that regard, let me comment that the indictment charges both possession and aiding and abetting for the purpose of distributing a controlled substance. If you, therefore, find that any defendant is guilty of possession beyond a reasonable doubt, then you must return a guilty verdict against that defendant. If you find that he was not in possession beyond a reasonable doubt, then you must return a verdict of not guilty" (emphasis added).
 
 
 16
 Appellants argue that the underlined portion of this instruction incurably misled the jury in suggesting that mere possession was sufficient to convict.
 
 
 17
 Appellants rely upon United States v. White, 390 F.2d 405 (6 Cir. 1968), in which a similar instruction was found plain error and resulted in reversal. But in White there had been no preceding correct instruction as there was here. Moreover, the instruction in this case, while confusing, stated the law correctly. That was not the case in White.
 
 
 18
 The instructions must be viewed in their entirety and within the context of the whole trial. As the Supreme Court said in United States v. Park, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975):
 
 
 19
 "(I)n reviewing jury instructions, our task is also to view the charge itself as part of the whole trial. 'Often isolated statements taken from the charge, seemingly prejudicial on their face, are not so when considered in the context of the entire record of the trial.' United States v. Birnbaum, 373 F.2d 250, 257 (CA2), cert. denied, 389 U.S. 837 (88 S.Ct. 53, 19 L.Ed.2d 99) (1967)." Id. at 674-75, 95 S.Ct. at 1913.
 
 
 20
 Cf. Cupp v. Naughton, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). In Park, the instructions as a whole, although misleading in parts, were found not to be an abuse of discretion.
 
 
 21
 In this case, the defendants were charged with only one offense possession and aiding and abetting with intent to distribute. Therefore, there was no possibility of confusion with other charges. The indictment itself was read twice, and, of course, the charge regarding the offense was correct. Moreover, defense counsel emphasized in closing argument the element of intent to distribute, pointing out that the government had the burden of proof.
 
 
 22
 The jury did not exhibit any confusion with respect to the instructions. Nor do we believe it was confused. Although district courts should take greater care in preparing and giving instructions to the jury, we conclude that the instructions taken as a whole here do not warrant reversal. See United States v. Elksnis, 528 F.2d 236, 238 (9 Cir. 1975); Cohen v. United States, 378 F.2d 751, 755 (9 Cir. 1967).
 
 Instruction on Lesser-Included Offense
 
 23
 Appellants argue that the evidence in this case compelled the trial court to give a lesser-included offense instruction for simple possession. A lesser-included offense instruction is required only where a disputed factual element is present in the greater but not the lesser charge. Sansone v. United States, 380 U.S. 343, 350, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). Appellants argue that the fact that the government introduced only circumstantial evidence made the element of intent to distribute disputed.
 
 
 24
 They cite United States v. Comer, 421 F.2d 1149, 137 U.S.App.D.C. 214 (1970), and Driscoll v. United States, 356 F.2d 324 (1 Cir. 1966), for support. But Comer was a murder case where evidence as to malice was equivocal and Driscoll was a tax evasion case where there was mixed evidence on intent to evade. Here the finding that appellants intended to distribute the marijuana must be presumed from the quantity of marijuana involved. Cf. United States v. Ramirez-Rodriquez, 552 F.2d 883, p. 884 (9 Cir. 1977); United States v. Daniels, 549 F.2d 665, p. 668 (9 Cir. 1977); United States v. Kelly, 527 F.2d 961, 965 (9 Cir. 1976).
 
 
 25
 In United States v. Henley, 502 F.2d 585 (5 Cir. 1974), a lesser-included offense instruction was refused by the district court in a prosecution for possession with intent to distribute seven tons of marijuana. The Fifth Circuit affirmed, finding that the evidence of possession alone of such a quantity of marijuana justified the court's refusal to instruct on simple possession. Id. at 586. We agree with this reasoning. We believe no other inference other than an intent to distribute is possible when over a ton of marijuana is found.
 
 Allen Charge
 
 26
 Appellant objects to the trial court's giving of the Devitt and Blackmar version of the Allen charge. He does not, however, show any prejudice from this charge. Furthermore, this court has long upheld modified versions of the Allen charge. See, e. g., United States v. Peterson, 549 F.2d 654, 657 (9 Cir. 1977); United States v. Handy, 454 F.2d 885, 889 (9 Cir. 1971), cert. denied, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972). But cf. United States v. Seawell, 550 F.2d 1159 (9 Cir. 1977) (second Allen charge found impermissible).
 
 Search and Seizure
 
 27
 Appellants argue that the warrantless search of the trailer at the warehouse was unjustified by any exigent circumstances and that therefore evidence of the marijuana seized should have been suppressed. But there was in fact no "search" at the warehouse at all. The agents merely seized contraband that they knew was there as a result of the earlier search in Ocotillo. The first search was undertaken only after the consent of the driver of the vehicle (Castellano) was received.
 
 
 28
 Appellants contend, however, that the officers were required to obtain a warrant at the warehouse despite the earlier search. They rely on the concurring opinion in United States v. Church, 490 F.2d 353, 356 (9 Cir. 1973), cert. denied, 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974). In that case, the court approved of a search of a vehicle made after four hours of surveillance. The concurring opinion states the view that police must obtain a warrant for any search conducted once the suspect is apprehended regardless of the circumstances.
 
 
 29
 We disagree. When, as here, a second search is based on an earlier valid search during which contraband was discovered, the seizure of that contraband after the second search is valid. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), is not to the contrary. The warrantless search invalidated in that case was made long after the defendants were in custody and was not based on any prior search. Indeed, the officers there had no reason to believe they would find evidence. Here it would have been a "meaningless gesture" for the police to obtain a warrant. See United States v. Cohn, 472 F.2d 290 (9 Cir. 1973).
 
 Voir Dire
 
 30
 Polson argues that the trial court failed to conduct a sufficient voir dire to disclose existing prejudice. The scope of voir dire is within the sound discretion of the trial court. United States v. Perez-Martinez, 525 F.2d 365 (9 Cir. 1975). Polson neither objected to the court's voir dire nor used all of his preemptory challenges. He may not now complain absent some showing of prejudice.
 
 Severance
 
 31
 The general rule is that persons jointly indicted should be jointly tried absent compelling circumstances. United States v. Donaway, 447 F.2d 940 (9 Cir. 1971). Appellants Best and Zimbardi claim that the trial court erred in denying their motion to sever based on a disparity in the weight of the evidence. But such a disparity is inevitable in joint trials and has not been found prejudicial before. Appellants give no reason why it should be in this case.
 
 Sentencing of Zimbardi
 
 32
 Zimbardi complains that the trial court failed to explicitly state that he would not benefit from sentencing under the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq. The court sentenced Zimbardi to a one-year term of regular custody. The following colloquy then took place:
 
 Mr. Rathfon (United States Attorney):
 
 33
 "Your Honor, with respect to the sentencing of Mr. Zimbardi, is it your Honor's finding that he is not eligible for the Youth Corrections Act or is that . . . ."
 
 
 34
 The Court: "That is correct. He is not being . . . ."
 
 
 35
 Mr. Rathfon: "I believe that has to be established on the record, your Honor."
 
 
 36
 The Court: "That he is not subject and is not eligible for confinement under the Youth Corrections Act."
 
 
 37
 The court then explained why it made this finding:
 
 
 38
 "In regard to defendant Zimbardi, his is a different case. He has more of a record; he was more deeply involved in this transaction."
 
 
 39
 Zimbardi argues that these statements do not provide the explicit finding that Zimbardi would not benefit from sentencing under the Federal Youth Corrections Act as required by Dorsynski v. United States, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974). The Court in Dorsynski held:
 
 
 40
 "Literal compliance with the Act can be satisfied by any expression that makes clear the sentencing judge considered the alternative of sentencing under the Act and decided that the youth offender would not derive benefit from treatment under the Act." Id. at 444, 94 S.Ct. at 3053.
 
 
 41
 See also United States v. Cruz, 523 F.2d 473, 474 (9 Cir. 1975).
 
 
 42
 We believe this requirement is met here. The Youth Act requirement and the necessity of making a record was called to the court's attention. The court considered the Act but decided that Zimbardi's record and greater involvement indicated he would not benefit from sentencing under it. The court mistakenly used the word "eligible" when it should have said "suitable," but its meaning is still clear. Dorsynski does not lay down an inflexible standard under which only established phraseology will suffice.
 
 Sufficiency of the Evidence
 
 43
 Appellants contend that the evidence was insufficient to support the jury's verdict. As to Polson, that contention is frivolous. He was involved at every stage of the marijuana's processing transportation, hiding, and unpacking from the time he met the driver in Pico Rivera. The roles of the other appellants were more limited. However, the evidence placed them in the truck preparing to unload and pack the marijuana at the time of their arrests. From this, the jury could reasonably infer knowledge about and participation in the plan for distribution. See United States v. Daniels, supra, 549 F.2d at 668-669 (sufficient evidence to support marijuana distribution conviction).
 
 Conclusion
 
 44
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Albert C. Wollenberg, Senior United States District Judge, Northern District of California, sitting by designation