UNITED STATES of America,
Plaintiff-Appellee,

v.

John Parker MONTGOMERY III,
Defendant-Appellant.

No. 78–1952.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Feb. 14, 1980.

Decided April 7, 1980.

Rehearing Denied June 27, 1980.

Margo J. McCormick, Asst. U. S. Atty., Albuquerque, N. M. (R. E. Thompson, U. S. Atty., and David N. Williams, Asst. U. S. Atty., Albuquerque, N. M., with her, on brief), for plaintiff-appellee.

Daniel C. Hale, Boulder, Colo., for defendant-appellant.

Before McWILLIAMS, DOYLE and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The defendant-appellant Montgomery, together with others who are not present before this court, was charged with possession with intent to distribute a quantity of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and importation of marijuana in violation of 21 U.S.C. § 952(a) and § 960(a)(1). The case was tried to the court, the Honorable H. Vearle Payne, Judge, presiding. All of the defendants were found guilty as to both counts and were sentenced to consecutive terms of imprisonment of three years on each count followed by a special parole term of three years. The appeals of defendants Robert Allen Barbeau, William John Mallow and Charles Edward McCord were heard together. In that separate appeal the judgment of the district court was affirmed as to each defendant. The opinion of this court by Chief Judge Seth in deciding the *Barbeau, Mallow* and *McCord* case dealt with some of

the problems which are presented here. Therefore, this court's decision in the companion case referred to above is dispositive of some of the issues presented in this case.

The three defendants mentioned above operated a truck which had a rendezvous with an airplane in southern New Mexico. Later, a roadblock was set up, arrests were made and the large quantity of marijuana was discovered and was seized.

John Parker Montgomery III, the defendant-appellant in this case, piloted an airplane which appeared on a radar screen monitored by U. S. Customs official Haran in Albuquerque, New Mexico. This was a so-called "pop-up target." The term "pop-up target" is used to describe an aircraft which appears suddenly on a radar screen and which has not been previously identified by the radar's computer as having filed a flight plan and having transmitted a transponder. When Haran first noticed the aircraft it was approximately 40 miles north of the border between Mexico and the United States. The particular air corridor which was being monitored was known as one which was used for international smuggling. Haran sent out a request that a Customs aircraft attempt to make contact with the target.[1] Thereafter, two planes, designated Lima 213 and Lima 214, were sent out from Albuquerque, New Mexico and El Paso, Texas. Before either of these made visual contact with the target, Haran lost radar contact for a period of ten to twelve minutes, after which time he regained contact with an aircraft which he presumed to be the target plane. The Customs aircraft then made visual contact with the target aircraft and radioed its identification number, which was read in the darkness with infrared goggles. The plane did not have its lights turned on. It was followed to a location near Las Vegas, New Mexico, where Customs officers observed the lights of a vehicle on the ground turn on. The target aircraft then maneuvered to a position behind the ground vehicle and

landed on the road in front of the vehicle, still without its lights on. The aircraft remained on the ground for approximately three minutes and took off again. Lima 213 stayed in visual contact with the target aircraft while Lima 214 attempted to maintain visual contact with the ground vehicle.

The target aircraft took off without its lights and flew in an erratic manner. It made evasive maneuvers, climbing and diving and turning, until it reached a point near Cimarron, New Mexico, where it turned on its lights and assumed a normal course and altitude until it reached its destination at Pueblo Municipal Airport in Pueblo, Colorado. Upon landing there, appellant was found to be the pilot and was arrested. When the arresting officers entered the plane, they observed a small amount of a substance thought to be marijuana debris and noticed the odor of a substance thought to be marijuana. Samples of the debris were later collected. No search warrant was obtained prior to searching the plane.

Meanwhile, a roadblock had been set up by the New Mexico State Police on State Road 104. Approximately an hour and a half after the plane and the vehicle were observed on the ground together, a 1976 white Ford pickup truck was stopped at the roadblock. A state officer requested identification from the driver of the vehicle. He looked through a partially opened curtain and saw dark-colored plastic bags inside. He also smelled the odor of marijuana. The three occupants of the truck were then arrested, and the vehicle was taken to a state police office where it was searched without a warrant. There were 19 plastic bags of marijuana which weighed 692 pounds in the vehicle and these were seized.

As a result, the appellant, together with the three occupants of the truck, were all indicted.

The defendant-appellant filed a motion to suppress not only the real evidence (the marijuana), but also the statements which he said violated his Fourth Amendment

---

1. At that time Mr. Haran contacted flight services in the near vicinity and made inquiry as to whether a plane of the description of the target plane had filed a plan. The responses were all negative.

rights. Following a hearing on the motion which occurred April 5, 1978, Judge Payne denied the motion without making any findings. A stipulation between the appellant, the other defendants and the government allowed submission of the case to the court on the evidence presented at the suppression hearing, together with the contents of the stipulation which conceded jurisdiction, the fact that the substance seized was marijuana, and that the chain of custody had been proper at all times. A jury trial was waived on the understanding that the evidence submitted would furnish the basis for the court to determine guilt or innocence. This was confirmed by Judge Payne on July 17, 1978, when he wrote:

> . . . Counsel for the defendants informed the Court that the matter would be submitted for disposition upon stipulated facts, briefs, and the evidence elicited during the course of the Motion to Suppress. . . . Therefore, I am providing the parties twenty days from today's date in which to file briefs in support of their positions . . .

After this letter, Montgomery filed a memorandum in support of his argument, stating that he had not been properly identified and since evidence as to this essential element was lacking, there was insufficient evidence to convict him. Judge Payne held an attorney's conference on August 9, 1978, with the local counsel for the defendants and lawyers for the United States present. The court reopened the trial and set a hearing on the merits for September 11, 1978. At that hearing the issue of identification of the appellant was the subject of the testimony. The witnesses said that the man on trial was the same person who had been arrested in Pueblo. When the hearing

was concluded, the judge entered findings of guilty on all counts against all defendants.

Three questions are submitted to us on this appeal.

First, did the trial court err in reopening the trial on the merits in light of the stipulation between the parties?

Second, was the evidence sufficient to support a finding of guilty?

Third, was there error in denying the appellant's motion to suppress?

I.

## THE VALIDITY OF THE STIPULATION AND THE ALLEGED ERROR IN REOPENING THE TRIAL ON THE MERITS

Appellant's argument is that the stipulation limited the evidence to be considered to determine guilt or innocence to the contents of the stipulation together with the testimony at the suppression hearing. He asserted that his waiver of a jury trial was premised on that interpretation of the agreement. Therefore, to allow additional evidence went beyond the waiver of jury trial and violated his constitutional rights to a jury trial. It is further contended that without the reopening of the case by the trial court and the taking of evidence, he would be entitled to acquittal.

The waiver of the right to a jury trial was clear and unequivocal.[2] Appellant argues that the waiver was a conditional one and the prime condition was a limitation of evidence that was to be used to determine his guilt or innocence. No doubt the appellant believed that the waiver of the jury trial was premised on the limitation of the

---

2. . . . [Defendant] hereby waives his right to a jury trial on the indictment herein.

   The basis for Defendant's waiving his right to a trial by jury is the fact that it has been agreed to between Defendant and Assistant United States Attorney, David Williams, that the Court will determine his guilt or innocence to the charges in the indictment based upon the testimony given on April 5, 1978 at a hearing on Defendant's Motion to Suppress in the United States District Court for the

District of New Mexico. Additionally, Defendant and Plaintiff have agreed to stipulate that the substance found in the vehicle which was stopped was marijuana, a Schedule II controlled substance, that the court had jurisdiction over the parties, that the chain of custody of the marijuana from the time of the seizure of the marijuana need not be proved, and that approximately 690 pounds of marijuana were seized from the vehicle stopped by the New Mexico State Police.

evidence to be used to determine his guilt or innocence. It is appellant's position that it was unjust to allow the reopening for further evidence. The government contends that it stipulated in the belief that there was no issue concerning identification of the defendant as the one who had been arrested in the airplane. The government also argues that the purpose of the stipulation was to simplify the trial and at the same time allow the defendant to appeal the suppression ruling. The government argues that it did not know that the testimony elicited at the suppression hearing was to be used as a substitute for a trial and that the failure to present formàl evidence as to the identity of the appellant was justified and ought not to preclude presentation of such evidence at the later date.

■ Certainly the trial court has discretion to determine whether to reopen a case, and ordinarily a decision to reopen will not be reversed on review without a clear showing of abuse of discretion. *United States v. Skolek*, 474 F.2d 582 (10th Cir. 1973); *United States v. Moehring*, 446 F.2d 516 (10th Cir. 1971); *United States v. Keine*, 424 F.2d 39 (10th Cir.), *cert. denied*, 400 U.S. 840 (1970); *Massey v. United States*, 358 F.2d 782 (10th Cir.), *cert. denied*, 385 U.S. 878, 87 S.Ct. 159, 17 L.Ed.2d 105 (1966); *Ayash v. United States*, 352 F.2d 1009 (10th Cir. 1965).

■ The trial court has some interest in seeing that justice is done and in seeing that all of the facts are presented. Where, as here, the judge is simply acting to prevent a manifest injustice brought about by inadvertence on the part of the government, the court's exercise of discretion should not be disturbed. The evidence in question was in effect a formal matter and the defendant ought not to be allowed to utilize the inadvertence in order to gain an unjust result.

■ Is a stipulation absolute in its effect? We think not. The rule is that "[r]elief can be granted from a stipulation in order to prevent manifest injustice."

*United States v. Harding*, 491 F.2d 697 (10th Cir. 1974). *See also In Re Westinghouse Electric Corp.*, 570 F.2d 899 (10th Cir. 1978). Language contained in the Ninth Circuit's decision in *United States v. McGregor*, 529 F.2d 928, 931 (9th Cir. 1976), is also relevant.

> Stipulations are entered into in order to dispense with proof over matters not in issue, thereby promoting judicial economy at the convenience of the parties, 9 J. Wigmore, Evidence §§ 2588–2597 (3d ed. 1940). Courts thus enforce stipulations as a general rule, absent circumstances tending to negate a finding of informed and voluntary assent of a party to the agreement. Id. at § 2590. A district court's decision to relieve a party from a stipulation will not be reversed when the party has entered into it by inadvertence and the opposing party would not be prejudiced (i. e. treated unfairly) by setting the agreement aside. (Citations omitted.)

The defendant did not request withdrawal of the waiver of jury trial and stipulation at the time that the court reopened the proceedings. He merely objected to reopening in a general way and requested that the judgment be entered on the record already made. Chief Judge Seth in the *Mallow, Barbeau* and *McCord* case (the companion case) states that a motion to withdraw the waiver would have been essential in order for the objection to be effective. Judge Seth also pointed out that Montgomery's identification issue was raised before guilt or innocence had been determined and that it was within the discretion of the trial court to reopen.

■ In sum, it is our view that this was a matter which was subject to the discretion of the trial court and that the judge had a right to exercise it in the manner that he did. He was in a position to measure the facts firsthand. Finally, there is no question from a review of the record prior to reopening but that Montgomery was the individual arrested in Pueblo. The issue was an effort to take advantage of a misapprehension on the part of the government's attorney.

## II.

### THE SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE VERDICT

█ Defendant-appellant maintains that the evidence was inadequate. We disagree. First, he maintains that there is a lack of evidence to support the possession charge. He maintains that there is a reasonable hypothesis which supports innocence. Even a struggle fails to disclose it. The claim is that the truck which met with his aircraft could have been a different truck than the one apprehended at the roadblock or that the truck acquired its cache of marijuana either before or after the rendezvous with his airplane. He also maintains that the plane did not originate in Mexico or any other place outside the United States.

His argument is that the evidence at most raises a suspicion as to his guilt; that proof beyond a reasonable doubt is not present. *See United States v. Ferg*, 504 F.2d 914 (5th Cir. 1974); *Lewis v. United States*, 420 F.2d 1089 (10th Cir. 1970); *Brumbelow v. United States*, 323 F.2d 703 (10th Cir. 1963). The case of *Lewis* is relied on. There the conviction was for interstate transportation of a stolen motor vehicle, and the problem was a lack of evidence showing actual theft (the corpus of the crime). It was held that the movement of the vehicle did not prove that it was stolen; that it was equally logical that it began as a legitimate road test of the vehicle and ended as something else. But in this case a view of the evidence in a light favorable to the prosecution in accordance with *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), reveals that the evidence of guilt is highly substantial. The hypothesis of innocence is nearly nonexistent. This court has rejected the reasonable hypothesis test. Our cases require proof beyond a reasonable doubt. *United States v. Sherman*, 576 F.2d 292 (10th Cir. 1978). *United States v. Drumright*, 534 F.2d 1383 (10th Cir. 1976), *cert. denied*, 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327; *United States v. Jackson*, 482 F.2d 1167 (10th Cir. 1973), *cert. denied*, 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974).

As to the possession, the evidence regarding the truck rendezvous with the airplane and the discovery of remnants of marijuana on the airplane at Pueblo provide strong support for the possession charge. *See United States v. Whitmire*, 595 F.2d 1303 (5th Cir. 1979); *United States v. Coplen*, 541 F.2d 211 (9th Cir. 1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 791 (1977); *United States v. Ratcliffe*, 550 F.2d 431 (9th Cir. 1976); *United States v. Cusanelli*, 472 F.2d 1204 (6th Cir. 1973).

█ It is true that there is no eye witness testimony as to the fact that the airplane actually crossed the border, but there was plenty of circumstantial evidence that it did. The fact that the route used was a corridor which was regularly used by airplanes to enter the United States makes the plane's presence some 40 miles north of the border significant. The fact that there was a landing on a highway followed by the arrest of the occupants of the truck, together with recovery of a very large amount of marijuana gives evidentiary support to the importation from Mexico allegation. What is needed is a high degree of probability that a border crossing took place. *United States v. Ivey*, 546 F.2d 139 (5th Cir. 1977); *United States v. Brennan*, 538 F.2d 711 (5th Cir. 1976). Sometimes it is said that there needs to be a reasonable degree of certainty that a border crossing occurred. *United States v. Tilton*, 534 F.2d 1363 (9th Cir. 1976). This test is often carried over into the formula for the degree of proof essential to establishing the element of importation. *See United States v. Ivey, supra; United States v. Soto*, 591 F.2d 1091 (5th Cir. 1979); *United States v. Miranda*, 593 F.2d 590 (5th Cir. 1979); *United States v. Reyes*, 595 F.2d 275 (5th Cir. 1979).

█ We would conclude that there was a high degree of probability that the airplane actually crossed the border and that the evidence is sufficient to establish beyond a reasonable doubt that the airplane did cross the border.

## III.

### DID THE TRIAL COURT ERR IN DENYING THE MOTION TO SUPPRESS EVIDENCE?

We conclude that it did not.

The contention is that the searches and seizures of both the pickup and the aircraft were brought about without probable cause and without a warrant, and that the evidence so obtained must therefore be suppressed.

The government argues that the appellant lacks Fourth Amendment interest in the search of the truck or the seizure of the marijuana found therein and thus does not have standing to challenge the suppression of the fruits of the seizure. It is well established that the suppression may be urged only by those whose rights are infringed by a search or seizure and not by those aggrieved solely by the introduction of incriminating evidence. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Alderman v. United States*, 394 U.S. 165 (1969). Usually a person is aggrieved if he has an interest in the premises searched or in the items seized or some other interest which gives him a basis for an expectation of privacy. *Katz v. United States*, 389 U.S. 347, 33 S.Ct. 507, 19 L.Ed.2d 576 (1967). Proof of a proprietary interest has not been considered essential in possession of narcotics cases. In that area defendants have been allowed to challenge the legality of a search or seizure notwithstanding inability to show a proprietary or possessory interest in the premises searched or the items seized. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

This so-called rule of "automatic standing" has been eroded in recent Supreme Court decisions. *Jones* held that it was unjust to force a defendant charged with possession to make an assertion of ownership in order to challenge the legality of a search because the admission of an essential element of the crime charged would be the result. Also regarded as unfair was the government's taking contradictory positions at a suppression hearing and at a trial. In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), it was held that the testimony of a defendant at a suppression hearing was inadmissible against him at trial on the issue of guilt. This eliminated some of the concerns which brought about the *Jones* decision.

It was in *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) that the concept of "automatic standing" was questioned. The Court in that case held that Brown lacked standing to challenge the lawfulness of a search of a warehouse in which merchandise stolen by Brown and stored at the warehouse was seized. Brown had not claimed a proprietary interest in the warehouse and was not present when the search took place. Also, Brown was not charged with an offense which included possession of the seized evidence at the time of the search as an element. The Supreme Court said that "the self incrimination dilemma, so central to the *Jones* decision, can no longer occur under the prevailing interpretation of the Constitution." 411 U.S. at 228, 93 S.Ct. at 1568. However, the *Brown* case did not overrule the *Jones* decision or its rationale. It stated that "it is not necessary for us now to determine whether our decision in *Simmons, supra*, makes *Jones'* 'automatic' standing unnecessary. We reserve that question for a case where possession at the time of the contested search and seizure is 'an essential element of the offense . . . charged.' *Simmons, supra*, 390 U.S. at 390, 88 S.Ct. 967." 411 U.S. at 228, 93 S.Ct. at 1569.

The conclusion to be drawn from the *Brown* decision as to automatic standing is inconclusive. There is a cloud over the *Jones* holding that one charged with possession of an item can always contest the legality of the search. Nevertheless, *Jones* has not been rejected and therefore it is not accurate to say that a defendant lacks sufficient interest to challenge the legality of the search of a vehicle such as the automobile in this case.

It was only after the Customs officials became aware of the rendezvous between the airplane and the vehicle on the ground that Officer Montoya of the New Mexico State Police was instructed to set up the roadblock referred to above at State Road 104 approximately seven miles east of Las Vegas, New Mexico. The truck searched was the only one that had come out of the area and it had come directly to the road-block. Montoya was advised in advance that the vehicle was approaching. The driver of the truck bent down and made a motion as if looking for something on the floor. Montoya approached the vehicle and requested the driver's license. The driver then stepped out of the truck. Montoya looked through the opening in the curtain of the camper on the body of the truck and observed dark-colored plastic bags. His testimony was that he had a belief derived from experience that these bags contained marijuana. This was fortified when he approached the back of the truck to get the license number and became aware of the odor of marijuana. It was then that he arrested the passengers and driver of the truck. The vehicle was taken to the state police station and was searched without a warrant.

■ From the basic facts outlined above, there existed probable cause which justified the search of the vehicle. The initial stop was justified under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The evidence that had developed prior to the stopping together with that which was acquired after the vehicle was brought to a halt constituted probable cause to believe that the vehicle held mari-juana. The nearest Federal Magistrate was 135 miles away. The search of the vehicle was justified without a warrant under *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ Somewhat the same considerations apply to the search of the aircraft in Pueblo. There was ample evidence to support the existence of probable cause that Mont-

gomery had violated the laws of the United States. The airplane had been observed flying without lights notwithstanding the darkness. It was followed to a location near Las Vegas. When a vehicle on the ground flashed its lights the plane landed and was approached by the vehicle. All of the lights were then extinguished. A few minutes later the airplane took off again, using evasive flying maneuvers. Visual contact was maintained until the plane landed in Pueblo. Officials at the Pueblo airport were aware of the seizure of mari-juana at the roadblock in New Mexico. All of these facts were known by the officer who made the arrest. The doctrine in *Chambers v. Maroney, supra,* is applicable to the search of the plane.

■ In addition, 49 U.S.C. § 782, which deals with the seizure and forfeiture of vehicles used to facilitate the transportation of contraband, is applicable. Once the plane was properly seized, the search without a warrant was permissible. *Sirimarco v. United States*, 315 F.2d 699 (10th Cir. 1963), *cert. denied*, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1032, held that "the existence of probable cause is justification for the seizure of a vehicle which has been used to transport or facilitate the transportation or possession of contraband so designated by statute." *Id.* at 701. *See also United States v. McCormick*, 502 F.2d 281 (9th Cir. 1974); *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

Our conclusion is the same as that of the other panel of this court which decided the companion case referred to above, *United States v. William John Mallow, Robert Allen Barbeau and Charles Edward McCord*, Nos. 78–1953, 78–1954 and 78–1955 (10th Cir., February 19, 1980).

The judgment of the district court is affirmed.

McKAY, Circuit Judge, concurring in part and dissenting in part:

I dissent in part from the majority opinion for the reasons set forth in Judge Hollo-way's dissenting opinion in the companion

case of *United States v. Mallow*, No. 78–1953 (10th Cir. Feb. 19, 1980).