**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 20 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENGTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CALVIN DEAN PETERS,

Defendant-Appellant.

No. 96-2286
(D.C. No. CR 91-395 SC)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **LOGAN** and **EBEL**, Circuit Judges.

Defendant Calvin Dean Peters appeals from his conviction for aggravated sexual abuse, in violation of 18 U.S.C. §§ 1153, 2241(a) and 2245(2)(A), and aggravated burglary, in violation of 18 U.S.C. § 1153, both occurring on an Indian reservation. The district court imposed a 210-month sentence to run consecutively to a 92-year New Mexico sentence for rape.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The victim in this case was raped and robbed in August 1990 in her home on the Navajo Indian Reservation. The forensic evidence recovered from the crime scene matched defendant's DNA profile which was on file from an earlier case (in which defendant's DNA had been obtained but did not match the forensic evidence). The United States government then apprehended defendant and charged him with this rape and burglary.

While defendant was in federal custody, state law enforcement officials matched his DNA profile with forensic evidence from two rapes in Farmington, New Mexico, that occurred in March 1989 and June 1990. After being released to New Mexico authorities for a consolidated state trial, defendant was convicted of the two Farmington rapes and sentenced. Defendant then was returned to federal custody and tried and convicted in the instant case.

Defendant argues on appeal that the district court erred in (1) ruling on various aspects of the DNA evidence; (2) admitting evidence of defendant's two prior rape convictions under Fed. R. Evid. 413; (3) ordering defendant to walk across the courtroom for the jury to observe; and (4) sentencing defendant. He also argued that the prosecution committed misconduct in offering testimony of Dr. Ranajit Chakraborty and in closing argument.

I

Defendant raises four arguments concerning the admission of DNA evidence. We review the admission of evidence, including expert evidence, for abuse of discretion. United States v. Davis, 40 F.3d 1069, 1073 (10th Cir. 1994), cert. denied, 115 S. Ct. 1806 (1995).

First, defendant contends that the district court should have held an admissibility hearing on the scientific reliability and validity of the fifth and sixth probes in its DNA testing procedure. See Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). The court conducted hearings on motions in limine as to the scientific reliability of DNA evidence established through four probes. After those hearings, the FBI laboratory added the fifth and sixth probes to its DNA testing procedure. The evidentiary samples admitted at trial matched defendant's known samples at six cellular loci. The government provided the defense information about the new probes before trial but defense counsel did not object to admission of the fifth and sixth probes.[1]

The court did not abuse its discretion in admitting evidence of frequency statistics generated by the fifth and sixth probes. All six probes were commercially available and used by the FBI and the New Mexico Department of Public Safety (DPS). The court

_____

[1] In his reply brief, defense counsel reveals some knowledge that the district court held a telephonic hearing as to admissibility of the fifth and sixth DNA probes; evidently that hearing was not recorded and does not appear in the record. If the district court held a telephonic hearing, defendant's argument is moot.

determined that DNA evidence was admissible under <u>Daubert</u>, and there is no factual basis to exclude this additional information. Defense counsel was allowed to cross-examine the government experts and present rebuttal witnesses concerning the reliability of the frequency statistics generated by each of the probes.

Defendant next contends that the district court erred in admitting population frequency evidence developed under the fixed bin and modified ceiling methods with six databases compiled by the FBI and the DPS laboratories. The record, however, reveals that the scientific evidence of population frequency satisfied <u>Daubert</u>. Defense counsel extensively cross-examined witnesses and produced its own expert testimony regarding compilation of databases and reliability of methodology employed, specifically exploring the random sampling issue. The district court did not abuse its discretion in admitting this evidence.

Defendant next argues that he was denied his Sixth Amendment right of confrontation when the district court prevented his attorney from cross-examining an FBI witness about two newspaper articles[2] describing problems in FBI laboratory procedures, or about an ongoing Justice Department study of the FBI laboratory. In disallowing the cross-examination the district court cited lack of relevance and the possibility of prejudice and confusion. Defendant's proffer did not establish that the articles related to the FBI's forensic DNA lab or that the government witness had any specific knowledge about the

---

[2] The newspaper articles are not part of the record on appeal.

- 4 -

Justice Department investigation. Further, the district court allowed defense counsel to extensively cross-examine government witnesses regarding laboratory procedures. Although the Sixth Amendment guarantees a defendant the right to confront witnesses against him, here the district court acted within its wide latitude to limit cross-examination. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); Fed. R. Evid. 403.

Defendant finally argues that the district court improperly refused to instruct the jury that DNA statistical evidence is scientifically invalid and unreliable. In fact, however, the proffered instruction essentially recited the Daubert rule on general admissibility of scientific evidence. The standard expert witness instructions given by the district court were consistent with defendant's proposed instructions and adequately covered the issues at trial. See United States v. Pena, 930 F.2d 1486, 1492 (10th Cir. 1991) (refusal of particular jury instruction is discretionary).

II

Defendant next contends that the district court erred in admitting evidence of his two prior rape convictions under Fed. R. Evid. 413 or Fed. R. Evid. 404(b). We review decisions to admit evidence of prior acts for abuse of discretion, United States v. Johnson, 42 F.3d 1312, 1315 (10th Cir. 1994), mindful that Rule 413 evidence should be liberally admitted. See United States v. Meacham, 115 F.3d 1488, 1492 (10th Cir. 1997) (Rule 414).

Defendant asserts that a four-year pretrial delay effectively resulted in ex post facto application of Rule 413 at his trial. We reject this argument based upon our holding today in United States v. Enjady, No. 96-2285 (10th Cir. Jan. 20, 1998). Defendant's trial occurred after the effective date of Rule 413, and application of new evidentiary rules does not create ex post facto issues. Collins v. Youngblood, 497 U.S. 37, 43 & n.3 (1990).

Defendant also argues the district court should have excluded evidence of his two prior rapes under Rule 403 because the potential for unfair prejudice outweighed its probative value. The district court correctly engaged in Rule 403 balancing before admitting Rule 413 evidence. See Enjady, No. 96-2285 (10th Cir. Jan. 20, 1998) (Rule 403 applies to Rule 413). The prior acts were clearly proved and resulted in convictions. The evidence was probative in that the two prior rapes involved comparable circumstances: they occurred in the same geographic vicinity and within a little more than a year of the instant rape; the perpetrator in each rape wore approximately the same shoe size; and all three crimes occurred in the victims' homes after the rapist gained entrance through a rear window. Potential prejudice was reduced by excluding details that would most likely inflame a jury, such as information about the victims' physical injuries. The prior rape evidence did not take an inordinate amount of trial time and did not detract significantly from the jury's focus on the assault charged in the instant case.

The district court did not abuse its discretion in admitting the Rule 413 prior acts evidence.

Defendant next contends that the district court erred in refusing to instruct the jury under Rule 404(b) that it could consider the prior rape evidence only for a limited purpose. We acknowledged in Enjady that Congress intended Rule 413 to remove certain similar crimes evidence from the existing restrictions of Rule 404(b); Rule 413 evidence is admissible if relevant and not unfairly prejudicial. Here the district court admitted the prior rape evidence under Rule 413 and not under Rule 404(b). To give the jury a Rule 404(b) limiting instruction when the evidence was admitted under 413 would create confusion.

III

Defendant asserts two instances of alleged prosecutorial misconduct. Allegations of prosecutorial misconduct are mixed questions of law and fact that we review de novo. Fero v. Kerby, 39 F.3d 1462, 1473 (10th Cir. 1994).

First, defendant claims that in closing argument the prosecutor improperly referred to defendant as a "serial rapist who must be stopped." VIII Tr. 1399. The challenged statement was a fair comment on the prosecution's overwhelming case of circumstantial evidence. Further, this isolated comment would not have persuaded the jury to convict defendant. See United States v. Espinosa, 771 F.2d 1382, 1401 (10th Cir. 1985)

(challenged argument reviewed to determine whether it would influence a jury to render conviction on grounds that exceed admissible evidence).

Defendant next contends that the government engaged in misconduct in presenting the expert testimony of Dr. Ranajit Chakraborty. He asserts that Chakraborty's testimony explaining population genetics, laboratory error rates and DNA analysis review protocols contradicted his previous testimony or authored works. A prosecutor may not solicit false testimony or allow false or misleading testimony to stand uncorrected. See Alcorta v. Texas, 355 U.S. 28, 30-32 (1957) (due process violation when prosecutor knew key witness testified falsely regarding evidence critical to establish defense of "sudden passion"). Here, however, the district court held a pretrial hearing to assess the impeaching testimony and found Chakraborty credible. The jury also heard impeaching evidence including extensive cross-examination of Chakraborty. The record reveals at most only ambiguous or inconsistent statements from an earlier trial; such statements provide a basis for impeaching a witness' credibility, but do not render Chakraborty's testimony false or misleading. See Tapia v. Tansy, 926 F.2d 1554, 1563 (10th Cir. 1991).

IV

Defendant next argues that the district court erred in ordering him to walk in front of the jury after the close of the evidence. We review for abuse of discretion a district court's decision to reopen a case. United States v. Montgomery, 620 F.2d 753, 757 (10th Cir. 1980).

The parties stipulated that defendant was approximately five feet five to six inches tall. The victim, about five feet five or six inches tall, described her attacker as slightly shorter, with his head at about her nose or slightly lower. After the close of evidence but before closing argument, a juror asked to watch defendant walk across the courtroom to observe his posture. Viewing defendant's gait and posture allowed the jury to evaluate the identification evidence presented at trial. See United States v. Bridgefourth, 538 F.2d 1251, 1252-53 (10th Cir. 1976) (upholding district court decision allowing government to reopen case so defendant could wear hat seized from his apartment for comparison to photo of crime). The district court did not abuse its discretion in reopening the evidence.

V

Defendant contends that the district court improperly sentenced him under the 1989 Sentencing Guidelines in effect when the crime occurred, rather than the 1996 guidelines in effect at the time of sentencing.[3] He further asserts that the district court erred in ordering that he serve his federal sentence consecutively to his state sentence and in remanding him to state custody. We review application of the guidelines de novo, United States v. Hershberger, 962 F.2d 1548, 1550 (10th Cir. 1992), and the decision to impose consecutive or concurrent sentences for abuse of discretion. United States v. Yates, 58 F.3d 542, 543-44 (10th Cir. 1995); 18 U.S.C. §§ 3553(a) and 3584(a).

---

[3] The parties argued at sentencing and in their briefs concerning whether the 1989 or 1995 guidelines applied. In fact, the district court sentenced defendant on November 1, 1996. USSG § 5G1.3 was the same in 1995 and 1996.

The Sentencing Guidelines in effect at the time of sentencing should be applied, USSG § 1B1.11(a), (b)(1), unless that application creates an ex post facto violation. Here, the applicable guideline, USSG § 5G1.3, allowed for consecutive sentences both in 1989 and 1996. See USSG § 5G1.3 comment. (Nov. 1989) ("Where the defendant is serving an unexpired term of imprisonment, but did not commit the instant offense while serving that term of imprisonment, the sentence for the instant offense may be imposed to run consecutively or concurrently with the unexpired term of imprisonment."); § 5G1.3(c) p.s. (1995) ("In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."); see also 18 U.S.C. §§ 3553(a) and 3584(a) and (b). Defendant's punishment was not rendered more harsh by application of the 1995 guideline.

Defendant's argument that the district court should not have returned him to state custody after his federal trial and sentencing also has no merit. See Gee v. Kansas, 912 F.2d 414, 417-18 (10th Cir. 1990) (recognizing that government may surrender a prisoner back to the state to serve an earlier imposed state sentence).

AFFIRMED.

Entered for the Court

James K. Logan
Circuit Judge