FILED
United States Court of Appeals
Tenth Circuit

February 6, 2024

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHUNYI XU, a/k/a David Xu,

    Plaintiff - Appellant,

v.

DENVER PUBLIC SCHOOLS,
SCHOOL DISTRICT NO. 1,

    Defendant - Appellee.

No. 23-1079
(D.C. No. 1:20-CV-03774-RMR-SKC)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

Chunyi Xu, a/k/a/ David Xu, appearing pro se, appeals the district court's entry of summary judgment in favor of his former employer, Denver Public Schools, School District No. 1 (District), on his claims of employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §§ 1981 and 1983. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I.  FACTUAL BACKGROUND[1]

Xu is Asian, a Chinese national, and a legal permanent resident of the United States.  At a District hiring fair in the summer of 2018, Edwin Salem, an Assistant Principal at the District's Noel Community Arts School (NCAS), offered Xu a job teaching math.  According to Xu, he was hired to teach 10th grade and above, but during training he was told he would be teaching 9th grade.

Xu had difficulty with classroom management and failed to consistently document student misbehavior in the District's online information system.  So, in late August 2018, Salem reassigned Xu to teach 10th grade math and 12th grade financial algebra classes because he thought Xu might do better with older students.

As part of evaluating teachers, the District uses a system called "Leading Effective Academic Practice" (LEAP).  R., Vol. 1 at 373, ¶ 29.  Two evaluators typically perform a LEAP evaluation, which occurs in the middle and at the end of the school year and includes "informal and formal observations, student growth, and student perception scores."  *Id.*, ¶ 31.  Xu's LEAP evaluators were Salem and NCAS Math Team Leader Morgan Schroeder.  Schroeder observed Xu in the classroom on multiple occasions, noting that students were frequently uncomfortable, confused, frustrated, and off-task.  Students also complained to the principal, Rhonda Juett, that

---

[1] Although the District cites to the facts as set out in its initial motion for summary judgment and related pleadings, we draw the facts from the District's Renewed Motion for Summary Judgment, Xu's response to that motion, and the District's reply.  Except where noted, the facts are undisputed.

they did not understand Xu's teaching, and they told Xu that "he talked too fast and his accent made it hard for them to understand," *id.* at 374, ¶ 46.

At Juett's direction, Salem and Schroeder met with Xu and his union representative on December 14, 2018, to discuss student concerns and performance concerns, including Xu's mid-year LEAP score of "not meeting," *id.* at 374, ¶ 39 (hyphenation and internal quotation marks omitted).[2]  Salem told Xu that his students complained that they "did not feel valued," "Xu made them feel dumb," and "they did not understand what Xu was teaching them."  *Id.* at 375, ¶¶ 48–49.  Xu responded that "NCAS students did not care about their education."  *Id.*, ¶ 50.  Salem put Xu on a performance improvement plan and told him that if the problems continued, Xu's contract probably would not be renewed for the following school year.

In addition to discussing his performance, Xu told Salem at the December 14 meeting that one of his students had called him a "Chino," which Xu felt was a racist term.  *Id.* at 382, ¶ 134.  Xu also reported the comment to the Dean of Students.  The student was moved out of Xu's classroom "about a week later" and "never called Xu a name again."  *Id.*, ¶¶ 136–37.

Salem sent Xu an email summarizing what had been discussed at the meeting. Xu replied that the summary was correct but told Salem that none of his students

---

[2] Xu admitted he received this rating, but he disputed its accuracy.  *See* R., Vol. 2 at 7, ¶ 39.  Xu also noted that he "scored in the top ten percent of high school math teachers nationwide on the Praxis Exam in 2018, which [the District] received when he applied," he ran NCAS's "Math Club," and he "was selected to the District Math Assessment Committee."  *Id.* at 16, ¶¶ 14–15.

were "A" students, all were "far below" grade level, and they did not "want to learn hard at all." *Id.* at 422. Xu also stated he had not "receive[d] enough support." *Id.* Salem then directed Xu to meet with him and Schroeder again to discuss Xu's reply.

At the second meeting, on December 19, "Xu told Salem he could not teach NCAS students because they were not motivated," but that "he could teach the students 'across town' because they were good at math, had parents that were more engaged, had better friends, and lived in a better community." *Id.* at 376, ¶¶ 63–64. Although "Salem became upset, raised his voice, and banged on the table," the meeting ended "amicably with a handshake," and "Salem later apologized to Xu." *Id.*, ¶¶ 65–67. But because of Xu's comments about and interactions with the students, "Salem asked Xu if he thought he was a good fit for NCAS and if teaching was the right career for him." *Id.*, ¶ 68.

At some point, NCAS learned that, due to a lower projected enrollment for the following school year, it would have to eliminate two teaching positions, one of which was in Math. The District calls this process a reduction in building (RIB). All five NCAS high school math teachers were considered for the RIB. Each of them received in advance questions that a committee (comprising Salem, another assistant principal, the Dean of Assessment, a science teacher, and the Math Ambassador Coordinator) would ask at an interview. In addition to the interview performance, the committee considered each of the teachers' LEAP scores.

The committee unanimously decided to RIB Xu because his interview was the weakest and he had the lowest LEAP scores. Salem was concerned about Xu's

reliance on answers to the questions he had typed out beforehand and his inability to elaborate on them. Salem also "did not believe that Xu believed in NCAS's students, or that he wanted to continue to work with them." *Id.* at 377, ¶ 81. And Salem did not understand how a guitar and a piece of Christian artwork Xu brought to the interview related to teaching math.[3]

On February 8, 2019, Salem notified Xu that he had been selected for the RIB. Salem also informed Xu that the RIB was different from nonrenewal, and Xu could still seek other jobs in the District.

Xu then filed a complaint of race, national origin, and age discrimination with the District. An NCAS human resources partner investigated the complaint and determined that no discrimination had occurred. Xu appealed, but the decision was affirmed.

Meanwhile, the defendants considered whether to renew Xu's contract with the District. Xu's year-end LEAP score was "not meeting," and over the entire year he received more "not-meeting ratings than any other ratings combined." *Id.* at 379, ¶¶ 95, 97 (internal quotation marks omitted). Salem believed Xu should not be renewed based on several factors: Xu's ineffective classroom management; his failure to establish classroom rituals and routines "despite coaching and feedback"; his year-end LEAP score; his failure "to document student behavioral issues," which

---

[3] In his opposition to summary judgment, Xu denied that the guitar and artwork were irrelevant, contending that they showed "talents consistent with a well-rounded teacher at a school for the arts." R., Vol. 2 at 10, ¶ 78.

Salem perceived as insubordination; and Xu's "derogatory comments" about NCAS students. *Id.* at 380, ¶¶ 102–04. Juett agreed with Salem, and they decided not to renew Xu's employment. After he was nonrenewed, the District withdrew an offer for him to teach summer school because a nonrenewed teacher is not eligible to teach at a District school for three years.

## II.  PROCEDURAL BACKGROUND

Xu filed a complaint with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission (EEOC), asserting retaliatory discrimination and discrimination on account of his race, national origin, and age. After the EEOC issued Xu a right-to-sue letter, he filed the district court action underlying this appeal. In the operative second amended complaint, filed by counsel, Xu advanced claims of discrimination (based on race and national origin) and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §§ 1981 and 1983.[4] Xu also repeatedly referred to a racially hostile work environment.

The District moved for summary judgment. The district court determined the District had not met its summary-judgment burden and therefore denied the motion. But the court found that the case was not ready for trial, either. It therefore ordered the parties to mediate, with the caveat that if mediation was not fully successful, the court would consider allowing the parties another chance to seek summary judgment.

---

[4] Xu also asserted a claim of age discrimination, but he later stipulated to voluntarily dismissing that claim.

6

After mediation was unsuccessful, the District filed a renewed motion for summary judgment. The district court granted the motion.

First, although the court doubted whether Xu had advanced a discrete hostile work environment claim, the court concluded that he failed to identify any evidence meeting the relevant standard, which requires a showing "that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and the production of "evidence from which a rational jury could infer that [the employee] was targeted for harassment because of [their] gender, race, or national origin." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004). The court determined that although Xu pointed "to a number of allegedly discriminatory actions involving his substantive job functions and teacher evaluation processes, including unannounced observations, increased planning requirements, a lack of computer or paraprofessional support compared to other teachers, and his placement on a performance improvement plan," he had nothing more "than his own subjective belief[] that these acts included elements of discriminatory intimidation, ridicule, or insults." R., Vol. 2 at 487. The court also concluded that there was no record support for Xu's contention that the harassment was pervasive, and that there was no evidence that Salem's outburst and table-banging at the December 19 meeting was "related to race," *id.* at 488.

The court next considered Xu's discrimination claims under Title VII and §§ 1981 and 1983. Because Xu had no direct evidence of discrimination, the court

applied the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In that framework, the plaintiff must first establish a prima facie case of discrimination. *Id.* at 802. If the plaintiff does so, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the [challenged adverse employment action]." *Id.* If the employer meets that burden, the employee must show that the employer's stated reasons are pretext for unlawful discrimination. *Id.* at 804.

The district court concluded that disputed questions of material fact precluded summary judgment based on the District's argument that Xu could not establish two elements of his prima facie case—(1) that he was qualified and satisfactorily performing his job and (2) that the RIB and nonrenewal occurred under circumstances giving rise to an inference of discrimination.[5] But the court determined that even if Xu could establish a prima facie case of discrimination, he failed to present any competent evidence that the District's proffered reasons for the RIB (interview performance and LEAP scores) and the nonrenewal (performance and conduct concerns) were pretextual.[6] The court observed that, based on "'the facts as

---

[5] "In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (internal quotation marks omitted).

[6] The District conceded that these were adverse employment actions for purposes of Xu's discrimination claim. But the District argued that Xu failed to exhaust his allegations that the District (1) improperly revoked his summer school position after he was nonrenewed and (2) later provided a negative employment

they appear to the person making the [employment] decision, not the aggrieved employee[,] [t]he relevant inquiry is not whether the proffered reasons were wise, fair or correct, but whether the employer believed those reasons to be true and acted in good faith upon those beliefs,'" an inquiry that turns on the "employer's 'good faith perception' of the reason for the adverse employment action, not plaintiff's subjective belief."  R., Vol. 2 at 495 (first alteration in original) (citation omitted) (quoting *Piercy v. Maketa*, 480 F.3d 1192, 1200–01 (10th Cir. 2007)).

Applying that standard, the district court rejected Xu's attempt to show pretext by claiming the District relied on performance and conduct problems that were never brought to his attention.  The district court found that factually, the argument was not credible given Xu's LEAP scores, the December 2018 meetings, and Salem's placement of Xu on a performance improvement plan.  The court observed that "the undisputed facts demonstrate that the [District] was in fact concerned with [Xu's] job performance throughout his tenure at NCAS." *Id.* at 496.

Turning to the retaliation claims, the district court concluded that the protected conduct at issue was Xu's complaint to the District about the RIB decision, and therefore the relevant adverse employment action was limited to his nonrenewal.  The court then determined that although there were disputed issues of material fact concerning a causal connection between the complaint and the nonrenewal, summary

---

reference.  The district court found that Xu had not contested those arguments and therefore had conceded that the revocation of the offer and the alleged negative reference were not adverse employment actions for purposes of his discrimination claim.  Xu does not challenge that ruling.

9

judgment was appropriate because the District had provided a nondiscriminatory reason for the nonrenewal, and Xu had not shown pretext. *See id.* at 498 (citing *Est. of Bassatt v. Sch. Dist. No. 1*, 775 F.3d 1233, 1238 (10th Cir. 2014) (applying *McDonnell Douglas* framework to retaliation claim)). The court explained that although the nonrenewal occurred less than two months after Xu filed the District complaint, "temporal proximity alone is insufficient to show pretext and defeat summary judgment." *Id.* at 498 (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004)). And, for the same reasons that Xu failed to show pretext for his discrimination claim, the district court concluded that he had not shown the District's "proffered reasons for the non-renewal were pretextual." *Id.*

The district court entered a separate judgment, awarding the District its costs. The parties filed a stipulation to the taxation of $2,981.75 in costs associated with deposition transcripts, which the court awarded. Xu filed a timely notice of appeal in which his attorney stated that going forward, Xu would represent himself.

## III.  DISCUSSION

On appeal, Xu argues that the district court erred in (1) granting summary judgment; (2) handling a motion to restrict access to his personal information; and (3) awarding costs. In his reply brief, he takes issue with some of the District's appellate filings. We address these arguments in order.

### A.    Grant of summary judgment

We review de novo a district court's decision to grant summary judgment, applying the same standard governing the district court. *Rivero v. Bd. of Regents of*

10

*Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020).  Summary judgment is proper if

"there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "We view all facts and evidence

in the light most favorable to the party opposing summary judgment."  *Craft Smith,*

*LLC v. EC Design, LLC*, 969 F.3d 1092, 1099 (10th Cir. 2020) (internal quotation

marks omitted).  Because counsel represented Xu in the district court, we afford only

Xu's pro se appellate filings a liberal construction, but we may not act as his

advocate by "constructing arguments and searching the record," *Garrett v. Selby*

*Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

We address Xu's opening-brief arguments concerning summary judgment by

sorting them into six categories:  (1) argument concerning application of the

*McDonnell Douglas* framework; (2) argument that the district court improperly

considered facts the parties advanced in their summary judgment briefs; (3) factual

contentions raised for the first time on appeal; (4) argument regarding irrelevant

factual and legal issues; (5) conclusory assertions of discrimination and retaliation;

and (6) argument that the district judge was biased against him.

### 1. Application of *McDonnell Douglas* framework

Xu appears to contest the district court's decision to apply the *McDonnell*

*Douglas* framework based on its determination that he failed to present any direct

evidence of discrimination.  "Direct evidence is evidence from which the trier of fact

may conclude, without inference, that the employment action was undertaken

because of the employee's protected status."  *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d

1101, 1105 (10th Cir. 2008). Xu has not identified, nor have we uncovered, any direct evidence that either the RIB or the nonrenewal decision was based on Xu's race or national origin. Thus, the district court was correct in applying the *McDonnell Douglas* framework.

Xu also points to the district court's determination that there was a disputed issue of material fact whether he was performing his job satisfactorily. He argues this was enough for the case to go to a jury because his job performance is the central issue in this case. But whether an employee was satisfactorily performing his job is an element of a prima facie discrimination case. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004). And to survive summary judgment, a plaintiff must establish both "a prima facie case *and* present[] evidence that the defendant's proffered nondiscriminatory reason was pretextual." *Randle v. City of Aurora*, 69 F.3d 441, 452 n.17 (10th Cir. 1995) (emphasis added). We therefore see no procedural error in the district court's assuming that Xu could establish a prima facie case and then granting summary judgment based on his failure to provide adequate evidence of pretext.

## 2. District court's handling of facts presented on summary judgment

Xu takes issue with the district court's handling of certain facts. He claims he did not get enough classroom support; other teachers had more supporters (as many as five) and/or fewer qualifications than he did; there was no evidence supporting the assertion that he failed to consistently document student misbehavior in the District's online system; his LEAP scores were "mis-interpreted, considered incorrectly, [and]

12

decided incorrectly," Aplt. Opening Br. at 10; he was not insubordinate; Schroeder was not a proper comparator, and the District "never disclosed" another new math teacher, who was a proper comparator, *id.* at 12; Xu's advanced algebra course was excluded from his LEAP evaluation; and Xu has excellent qualifications.

These alleged facts either lack record support,[7] contradict the record,[8] represent Xu's subjective beliefs (sufficiency of classroom support he received, superiority of his qualifications), or concern whether the District's RIB and nonrenewal decisions were correct or fair (remaining alleged facts). As such, they fail to contradict evidence that the District thought the reasons for its decisions were true and made the decisions in good faith rather than as a pretext for discrimination or retaliation. We therefore see no error in the district court's handling of these facts. Although Xu believes that he was qualified for and satisfactorily performing his job,

---

[7] The District identified the other new math teacher. *See* R., Vol. 1 at 372, ¶ 11. And Xu admitted that she was considered for the RIB, *id.* at 377, ¶ 73; that she had earned an "effective" rating on her LEAP evaluations, *id.* at 380, ¶ 112; that Salem had no concerns about her performance or conduct, *id.*, ¶ 113; and that, to Salem's knowledge, she had made no "demeaning comments about students," *id.* at 381, ¶ 115. *See* R., Vol. 2 at 10, ¶ 73; *id.* at 12, ¶¶ 112–13, 115. The district court discussed whether Schroeder and the other teacher were proper comparators as part of its analysis of whether Xu could make a prima facie showing that the RIB occurred under circumstances giving rise to an inference of discrimination. *See id.* at 494.

[8] Xu admitted he did not consistently document student misbehavior and that Salem considered that failure insubordination. *See* R., Vol. 2 at 7, ¶ 24 & 12, ¶ 103 (admitting the District's statements of undisputed material fact that "Xu knew that he was supposed to document misbehavior in Infinite Campus, but he did not consistently do so," R., Vol. 1 at 373, ¶ 24, and that Salem considered this insubordination, *id.* at 380, ¶ 103).

his subjective belief is not the relevant consideration. *See Piercy*, 480 F.3d at 1200–01. Of course, an employee may demonstrate pretext by showing that "the employer's proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." *Id.* at 1200 (internal quotation marks omitted). But Xu did not make that showing in the district court, and he has not done so on appeal.

Regarding his retaliation claim, Xu contends that the district court's reliance on his District complaint as the relevant protected activity overlooks that he "had gone through all procedures internally or externally since Aug. 2018, including Reporting, [the December 2018] Meetings, [and] Level I & II Grievances." Aplt. Opening Br. at 10–11; *see also id.* at 16. But he points to no evidence that he complained to the District that any of its employees unlawfully discriminated against him other than by filing his District complaint. We therefore reject this contention of error.

### 3. Factual contentions presented for the first time on appeal

Xu makes several factual allegations that he did not call to the district court's attention: his year-end LEAP score showing "35% good," which qualified him for renewal, was purposely not approved until after his nonrenewal, *id.* at 10, 22; at the December 19 meeting, Salem orally promised to guarantee Xu's renewal if he made any improvements; Salem intentionally disrupted Xu's RIB interview by "scream[ing] out at least three times," thereby giving "an explicit signal to everyone in the panel to get rid of [Xu]," *id.* at 12; and Xu's math students were those

14

Schroeder taught the previous year, and Xu's "data exceeded hers about 10-12%

better," *id.* at 21.

Xu brought none of these contentions to the district court's attention in his

opposition to the summary judgment motion, and he has not argued for plain-error

review here. He therefore has waived our consideration of these alleged facts. *See*

*United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) ("When an appellant

fails to preserve an issue [by not raising it in the district court] and also fails to make

a plain-error argument on appeal, we ordinarily deem the issue waived . . . and

decline to review the issue at all . . . .").[9]

### 4. Irrelevant factual contentions and legal arguments

Xu makes much of his initial assignment to teach 9th grade math and his

eventual reassignment to 10th and 12th grade classes. He views this all as

"deceptive" in light of the promise allegedly made when he was hired that he would

be teaching 10th grade and above. *See* Aplt. Opening Br. at 8, 20. While this may

have frustrated Xu, he fails to explain, and we fail to see, how it bears on pretext.

Xu takes issue with the handling of complaints he made about student

behavior. *See id.* at 11, 19 (faulting the District for taking "two months" to remove

from his classroom the student who called him a "Chino"); *id.* at 20 (claiming that a

---

[9] Xu also claims the District disclosed the existence of a video Schroeder recorded of him teaching a class, but it "only can be put into oral argument that [his] LEAP was rated incorrectly lower." Aplt. Opening Br. at 13. We fail to understand his point. If he wanted to procure the video and use it in opposition to the District's motion for summary judgment, he could have done so during discovery.

student walked on tables in Xu's classroom for five minutes in front of Schroeder, apparently without any disciplinary consequences); *id.* (asserting that Salem failed to discipline another student who ripped up a test up and threw it in Xu's face after Xu caught him cheating). Setting aside that the student who called him a "Chino" was removed only a week after Xu reported the incident to the Dean of Students,[10] Xu offers no theory—and points to no evidence—that unlawful discrimination or retaliation in the RIB or nonrenewal may be implied from the District's handling of these behaviors.

Xu points out that he was the only teacher who did not get a cap and gown to wear at graduation. But when asked at his deposition why this was not just a mistake, he replied that because he had already been nonrenewed, Juett did not want him to attend the graduation. This fact, therefore, has no relevance to whether the RIB or nonrenewal were discriminatory.

Xu argues that Salem, NCAS, and the District are "habitual violators" of Title VII. Aplt. Opening Br. at 17. Xu offers no record support for his contention, and in any event we see no relevance to what occurred in *this* case.

Xu asserts the District maliciously introduced evidence of his criminal fraud conviction. This occurred when the District opposed Xu's motion in limine to exclude evidence of the conviction and argued that, in the event the case went to trial,

---

[10] Xu admitted that the student was removed only about a week after Xu reported the incident to the Dean of Students. *See* R., Vol. 1 at 382, ¶¶ 135–36 (motion for summary judgment setting out relevant facts); R., Vol. 2 at 13–14, ¶¶ 135–36 (Xu's response admitting these facts).

the evidence was relevant to credibility and damages. *See generally* R., Vol. 2 at 97–106. But the district court did not discuss evidence of the fraud conviction in its opinion granting summary judgment, and there is no indication the conviction affected that ruling. We therefore fail to see the relevance of Xu's argument.

Xu also takes issue with his attorney's performance in responding to the renewed motion for summary judgment. That issue is not properly raised in this appeal. *See Nelson v. Boeing Co.*, 446 F.3d 1118, 1119 (10th Cir. 2006) (explaining that generally, "ineffective assistance of counsel is not a basis for appeal" in civil cases, even those arising under Title VII).

### 5. Conclusory assertions

Xu makes many conclusory assertions, including that he was "severely demanded [sic], humiliated, harassed, scrutinized, [and] discriminated against," "Juett stalked, and sabotaged [him]," and the District "persecuted [him]," Aplt. Opening Br. at 9; in 2016, 2017, and 2018, NCAS used a RIB regardless of projected enrollment in order "to get rid of the disliked teachers," *id.* at 12; the District's investigation of his complaint omitted "comparison data and . . . dark story," so it was "a plotted conspiracy," *id.*; and affidavits the District relied on in support of its motion for summary judgment "have outstanding false statements." *id.* at 19. He offers no record support for these assertions, nor do we see any. "[C]onclusory allegations—lacking evidentiary support in the record—do not suffice to create a genuine question [regarding] pretext." *Salguero*, 366 F.3d at 1178.

### 6. Judicial Bias

Xu argues the district judge was biased because the judge accepted Salem's characterization that Xu was insubordinate when he failed to consistently document student misbehavior, despite that no one had ever told Xu he was insubordinate. But as noted above, Xu admitted the fact that Salem thought Xu was insubordinate, so we fail to see how the district court's reliance on that admitted fact indicates improper bias. In any event, Xu's allegation of bias stems only from the district court's ruling. "Adverse rulings alone do not demonstrate judicial bias." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010).

### B.    Motion to restrict

Attached to the District's response to Xu's motion in limine was an exhibit including Xu's personally identifiable information (PII). Upon realizing this, the District filed a motion to restrict public access to all the exhibits, claiming the disclosure was inadvertent. The district court denied that motion without prejudice because the District failed to comply with a local court rule. However, recognizing the need to protect the information, in the same order the court restricted public access to all the exhibits sua sponte. Shortly after, the court issued its order granting summary judgment. The District then filed a renewed motion to restrict from public view the one exhibit containing Xu's PII. The district court granted that motion.

On appeal, Xu faults the district court for denying the District's first motion to restrict and for failing to restrict public access to his PII. This argument overlooks

that although the court denied that motion, it restricted public access to the exhibits sua sponte. Thus, we see no error in the district court's denial of the motion.

Xu also claims the District's disclosure was malicious and violated a protective order the court had entered. He therefore proposes the district court should have sanctioned the District for disclosing his PII. But Xu never asked the court to sanction the District, so there is nothing for us to review. And, assuming the court could have imposed sanctions sua sponte, Xu develops no argument that the court should have done so. We therefore reject Xu's proposition.

## C.     Award of costs

Xu complains that he should not have to pay costs incident to the taking of depositions, which the district court awarded. But Xu stipulated to those costs through counsel. Although "relief can be granted from a stipulation in order to prevent manifest injustice," *United States v. Montgomery*, 620 F.2d 753, 757 (10th Cir. 1980) (parentheses and internal quotation marks omitted), Xu merely argues that it would be "irrational" to make him pay for costs incident to Salem's deposition because Salem tried to avoid answering questions about his own alleged history of misconduct, Aplt. Opening Br. at 9. Nor does Xu's argument reveal any "circumstances tending to negate a finding of informed and voluntary assent" to the stipulation, which is another exception to the "general rule" that courts "enforce stipulations." *Montgomery*, 620 F.2d at 757 (internal quotation marks omitted). His argument, therefore, is unavailing.

**D.      Reply brief argument concerning the District's appellate filings**

In his reply brief, Xu argues that the District's attorneys should be disqualified because one of them filed an entry of appearance more than fourteen days after the appeal was docketed. We disagree. Counsel for a party must enter an appearance "[w]ithin 14 days after an appeal . . . is filed." 10th Cir. R. 46.1(A). One of the District's attorneys did just that. But "[o]ther attorneys whose names subsequently appear on filed papers must also file written appearances." *Id.* The other attorney therefore properly entered their appearance after the initial fourteen-day deadline.

Xu also takes issue with the District's request for a 30-day extension of time to file its response brief, contends the brief was untimely because it was filed after 5:00 p.m. on the due date, and claims it exceeded the word limit. These arguments are not well taken. The District's request for more time was based on counsel's illness, and a two-judge panel of this court granted the motion. We see no error. The response brief was electronically filed before midnight on the due date, so it was timely. *See* Fed. R. App. P. 26(a)(4)(B). And the brief complied with the word limit, which excludes portions of a brief that Xu includes (wrongly) in his calculation that the brief was overlength. *See* Fed. R. App. P. 32(a)(7), (f).

## IV.  CONCLUSION

The district court's judgment is affirmed.  The District's Motion to Supplement the Record on Appeal is granted, and the Clerk's Office is directed to supplement the record with ECF Nos. 80, 81, and 97.

Entered for the Court

Carolyn B. McHugh
Circuit Judge